MABEL GRIFFIN-MIDDLETON, Appellant, v. CITY OF CEDAR FALLS et al., Appellees.

**EVIDENCE: Negligence—Reasonable Care—Custom.** Custom does
1  not, of itself, fix a legal standard of care, but may have material
bearing thereon. When plaintiff's care is in issue and his conduct
does not amount to negligence *per se*, he may show that other
people, generally and customarily, did just as plaintiff did at the
time in question, *provided* it be first clearly shown that the facts
and conditions under which people customarily acted were sub-
stantially the same as the facts and conditions under which plain-
tiff acted. Evidence held properly rejected, because of failure to
show similarity of conditions.

  PRINCIPLE APPLIED: Action for personal injury. An ob-
struction, unknown to plaintiff, existed on the parking on the
west side of a street near a mail box. At about 9 o'clock, on a
very dark night, with no lights in the street, plaintiff went diago-
nally across the street from the east side thereof, where she
roomed, to the mail box in order to mail letters, fell over the ob-
struction and was injured. Evidence was offered that people resid-
ing on the east side of the street customarily passed diagonally
across the street to the mail box for the purpose of depositing
mail therein, but no attempt was made to show that such cus-
tomary acts were done during dark nights when no lights were
burning. *Held,* evidence properly rejected.

**MUNICIPAL CORPORATIONS: Negligence—Crossing Street Other**
2  **Than at Regular Crossing.** Negligence cannot be predicated on
the act of one oblivious of the existence of any obstruction in a
public street, in crossing said street on a dark night, with no lights
burning, at a point other than a regular crossing.

**MUNICIPAL CORPORATIONS: Streets—Extent and Degree of Care**
3  **Required—Instructions Indirectly Limiting Duty to Sidewalks.**
An instruction which directly told the jury that the obligation of
a city to keep its streets in a reasonably safe condition was con-
fined to the sidewalks and regular crossings would be manifestly
erroneous; an instruction which *indirectly* so states is equally
erroneous.

**TRIAL: Instructions—Undue Emphasis on Plaintiff's Theory—Er-**
4  **ror.** It is error to so draw instructions as to emphasize features
in the testimony on one side, while sinking out of view portions
of the testimony on the other side, deserving of equal attention.

MUNICIPAL CORPORATIONS: Defective Street—Imprudence of Passing Over—Jury's and Injured Person's Viewpoints Contrasted—Contributory Negligence. If one passes over or across a public street, in which an obstruction exists, and knows that it is imprudent to do so, and is injured, the penalty pronounced is one of contributory negligence. But this principle has no application when the injured party has no knowledge of the obstruction. In such case, it is error to instruct that the jury should find that the injured party was guilty of contributory negligence, if *they*, the *jury*, believe that it was imprudent to pass over the street. The viewpoint of the jury after the injury has occurred and the evidence has been presented, and the viewpoint of the injured party under the conditions facing him at the time of the injury, present a radical and self-evident difference.

MUNICIPAL CORPORATIONS: Negligence—Defects in Street— Known and Unknown Defect Contrasted. One who passes over or along an obstruction in a public street and is injured thereby, *knowing* of the existence of the obstruction, *knowing* that it is imprudent to attempt to so pass, and *knowing* of a safer way which he might take, is guilty of contributory negligence. Self-evidently, this principle has no application when the injured party had no *knowledge* of the existence of the obstruction.

EVIDENCE: Personal Injury—Present Pain—Complaints. Complaints of present pain on the part of plaintiff are admissible in an action for damages for personal injury.

*Appeal from Black Hawk District Court.*—F. C. PLATT, Judge.

TUESDAY, SEPTEMBER 21, 1915.

REHEARING DENIED FRIDAY, JANUARY 21, 1916.

ACTION to recover for personal injuries. Verdict and judgment for the defendant. Plaintiff appeals.—*Reversed.*

*Sylvester Flynn* and *E. H. McCoy*, for appellant.

*Pickett & Swisher* and *J. B. Newman*, for appellees.

GAYNOR, J.—This is an action to recover damages for personal injuries alleged to have been caused by the negligent obstruction of a public street in the city of Cedar Falls. There are three defendants. It is claimed that certain of the defend-

ants negligently obstructed the street, by placing a reel or wire spool on the parking at a point near the west side of Olive Street, one of the public streets of the city of Cedar Falls, a few feet east of the west line of the street; that the reel or wire spool was about eight inches wide, about three feet in diameter, and had a number of handles that extended still further out; that this reel had remained at the place on Olive Street for about two weeks prior to the plaintiff's injury; that this rendered the street dangerous for travel; that no lights, barriers, or signals of any kind were placed to warn people using the street in the nighttime of the existence or location of this obstruction. This is the negligence charged against certain of the defendants.

The negligence charged against the city is that it did not remove or cause the removal of said reel from the street, and did not use lights, barriers or signals of any kind to warn persons of its location; that it permitted said street to be used by the public without removing the obstruction, thereby rendering the street unsafe for travel. It is claimed that there was a mail box near the west line of Olive Street, and that, to reach this mail box, the people living on the east side of the street were in the habit of going directly across the street from their respective homes; that this was the customary way of reaching the box; that defendants knew of this custom, and that people were in the habit of traveling across the street at 'this point to reach the mail box.

It is claimed that the plaintiff was a student attending the Iowa State Teacher's College in Cedar Falls during the year 1910; that, for two weeks immediately preceding her injury, she was at her home at Eagle Grove; that she roomed on the east side of Olive Street; that she did not see or know of the location of this reel; that about 9 o'clock on March 21st, she went to deposit some letters in the mail box and tripped or stumbled over this wire spool and was thrown violently to the ground and severely injured.

The defendants answered by a general denial. The cause

was tried to a jury. At the conclusion of the evidence, the court directed a verdict for the Iowa Telephone Company. The case was submitted to the jury as to the other defendants, and resulted in a verdict in their favor. Plaintiff appeals.

The errors relied upon may be stated under two heads: (1) The court erred in its ruling upon the evidence; (2) the court erred in its instructions to the jury. We take up the errors assigned in this order.

The first error assigned on the admission of evidence relates to the action of the court in denying to the plaintiff the right to show that it was the general custom of people residing on the opposite side of the street to pass diagonally across this street to the mail box for the purpose of depositing mail therein. In rejecting this testimony as to what others generally did, we assume that the court was of the opinion that it did not meet the requirements of the substantive law fixing the standard of care required of the plaintiff. The court, in its instructions to the jury, said:

1. EVIDENCE: negligence: reasonable care: custom.

"The burden is on the plaintiff to prove that she was free from negligence that contributed to the accident of which she complains. Negligence is the want of such ordinary care and prudence as *reasonably prudent men* generally, in respect to the same subject-matter and under the same circumstances, would use to endeavor to prevent the injury complained of. By ordinary care is meant that care which persons of ordinary prudence exercise."

This statement of duty, on the part of the plaintiff, is no doubt in accord with the law; but, however, a different question arises when we attempt to define or consider the evidence by which this substantive fact is proved. We must not confuse this substantive law of duty with the proof by which the mind is brought to a recognition of the duty and its performance. While it is true that evidence of what other people generally do, in relation to the same matter, does not fix a legal standard by which to judge the conduct of the com-

plaining party, yet it has probative force upon that issue. We must recognize the distinction between the use of such facts evidentially, and their use as involving a standard of conduct in substantive law. What others generally do, in respect to the same matter, does not, in and of itself, fix the standard by which the conduct of the plaintiff must be judged. What constitutes due care,—what constitutes ordinary prudence and diligence,—is a question of fact; and, in judging the conduct of another, all the facts and circumstances attending the act must be kept in mind. This is especially true with reference to the degree of care required.

Now, it is not proper to say that, if the plaintiff in this case did just what others generally did, in her neighborhood, in crossing this street, she was free from negligence; but the conduct of others has a legitimate bearing in determining the ultimate fact as to whether she was then acting as a reasonably prudent person would under the circumstances. Some courts have rejected this evidence, on the theory that by its admission the court fixes a standard of conduct by which the plaintiff is to be judged. The court, therefore, in instructing the jury, should, in fairness to both parties, admit this testimony, and limit it to its legitimate purpose, to wit, as merely evidentiary, and not as a legal standard of conduct. This rule rests upon the same reason, and is bottomed on the same thought, that admits the showing of a custom among others generally as to the use of a certain instrumentality in a certain way in and about their business. Thus in *Korab v. Chicago, R. I. & P. R. Co.,* 165 Iowa 1, this court had before it the question as to whether the defendant company was negligent in omitting to properly and sufficiently guard or block the space between the guard rail and the main rail. The question involved was whether it was more dangerous to block or not to block. Evidence was offered to show the custom of other roads in respect to the same matter. This court said in passing upon the question, in substance, as follows:

Custom furnishes no excuse, if the custom, habit or prac-

tice complained of is in itself negligent. But the master's conformity to general usage, custom or practice is regarded merely as evidence tending more or less strongly to exculpate him from the charge of negligence. After it was shown that the defendant had complied with the usage of other employers in the same line of business, the question whether the particular instrumentality or method was reasonably safe still remained open. It was simply held that this kind of testimony was admissible, but was not conclusive upon the question of want of due care.

In *Baker v. City of Grand Rapids,* (Mich.) 69 N. W. 740, an action to recover for personal injuries received upon a public street, the Michigan court said:

"Testimony was introduced tending to show that it was customary for people to cross the street in the direction taken by plaintiff, and that a path had been worn across the street at this point. We think that this testimony could not have damaged the defendant, as it was the right of the plaintiff to cross the street at any portion of the traveled way, and he was not confined to the cross walks (citing authorities). The fact that others, in considerable numbers, took the same course, bore on the question of plaintiff's care on the occasion in question." This case was cited with approval by our court in *Finnegan v. City of Sioux City,* 112 Iowa 232, 234.

If the act complained of was *per se* negligent, of course any evidence tending to show that others did the same act in the same way would not tend to exculpate the party complaining; but where the act itself is not negligent *per se,* and the question is one for the jury as to whether or not, under all the facts and circumstances, the plaintiff conducted herself as a reasonably prudent person would, under like circumstances and in relationship to the same matter, then the testimony becomes material and has probative force upon the issue.

The foundation for this sort of evidence, though, ought to be clearly laid. If it is attempted to be shown, upon this issue, that others did the same as the injured party did, and

that the conduct of others was substantially the same as the conduct of the plaintiff, it must be shown that the facts and circumstances and conditions under which they acted, were substantially the same as those under which the plaintiff acted. The action of the court in refusing this testimony, under the record made here, would not, in our opinion, justify a reversal of this case. It was not shown, nor attempted to be shown, that it was the general custom of other parties to cross to this mail box, over this street, in the nighttime, when the street lights were not burning. The conditions under which plaintiff attempted to cross were not the same as those conditions that attended the act of the others, a showing of which was refused:

When we consider, further, that the plaintiff was not confined in her travel to the sidewalks and crosswalks, but had a right to cross the street at any other point at which it was open for travel, and that no negligence can be charged against her in the choice of ways, in that she chose to cross the street diagonally, rather than to proceed along the sidewalk, we see that the testimony offered as to what others did in a case of this kind adds very little to the strength of plaintiff's case. She had a right to cross where she did. All that was required of her in so doing was to exercise that care and caution in crossing which reasonably prudent persons exercise under the same circumstances and conditions. No one can be charged with negligence for the doing of that which, under the law, he has a right to do; but in every act the actor is required to exercise reasonable care and caution for his own safety, and if he is injured in the performance of the act, and the injury can be traceable to a failure to exercise that care for his own safety which the law requires of him, he is defeated in an effort to recover for the injury, even though, as a primary question, he had a right to do the thing which he was in the act of doing.

2. MUNICIPAL CORPORATIONS: negligence: crossing street other than at regular crossing.

The act of the plaintiff in attempting to cross the street on this night did not, in and of itself, constitute negligence. Darkness had settled down upon the entire city. Darkness enveloped the sidewalks and crosswalks as well as the street at the point where plaintiff attempted to cross. It is the duty of the city to keep its streets in a reasonably safe condition for travel in the nighttime, as well as in the daytime. If it leaves that upon its streets which constitutes a nuisance, interferes with public travel, endangers the safety of the passengers, it cannot complain of the conduct of a citizen who, without knowledge of this condition, attempts to use the street in the nighttime; nor can it predicate negligence on the part of the user of the street in the nighttime on the ground that he knew that the night was dark and the city had failed to furnish any lights to guide him in his journeyings, when it is not shown that he knew of the peril. The right to use the streets and the duty to keep the streets in reasonably safe condition for travel, the duty to put signals and warnings at a point where the street is dangerous for travel, are all concurrent. This fact must not be lost sight of, that, in attempting to cross at the point where she did, the plaintiff was within her right.

So far as this record discloses, this street had been opened for public use to its full width. As we gather from the record, there were sidewalks along the lot line on each side of the street, then parking and curbing, and the street proper. There were no lights in the vicinity of this obstruction. In fact, there were no street lights at all. Had this street been unobstructed, and in a condition reasonably safe for travel, at the point where plaintiff attempted to cross it, the darkness would have added nothing more to the danger of crossing at this point, where plaintiff attempted to cross, than would have been involved in her act in passing along the sidewalk or over the crosswalk. To attribute negligence to the plaintiff for attempting to cross the street, at night, without lights,

at the point where she attempted to cross, could, with as much reason, be charged against her in the event that she under-took to use the sidewalks and crosswalks in the nighttime without lights, and was injured by reason of obstructions therein negligently left.  To assume that the plaintiff was negligent in attempting to cross this street, at the point where she attempted to cross it, on the ground that the night was dark and the city had furnished no lights to guide her way, would be to assume that it·was the duty of the plaintiff to anticipate, or at least keep in mind, that possibly the city might be negligent, and dangers and perils might lurk in the darkness.

To say as the court did say, ''That the city had furnished sidewalks and crosswalks which were reasonably safe for travel, and that if the *jury found,* from the evidence, that the night was very dark, and that it was impru-

3. MUNICIPAL COR- dent for the plaintiff to attempt to cross the
   PORATIONS:
   streets: extent  street, at the point where she did cross, on
   and degree of
   care required:  account of the darkness, and there was a
   instructions in-
   directly limit-  safer way which she might have taken in going
   ing duty to
   sidewalks.      where she did, she was guilty of contributory

negligence and could not recover'', was to say that plaintiff could not recover if she attempted to cross the street at this point on a dark night, although she knew nothing of the con-ditions that rendered the street more unsafe than were the sidewalks and crosswalks, if it were, in fact, unsafe at the time.

The court, in effect, told the jury that, in the event that the city furnished safe sidewalks and crosswalks, a traveler had no right to cross a public street on a dark night, in the event that there were no lights to guide him on his journey. The court thereby practically denied the right of·a citizen to cross the street at any point other than upon the sidewalks, on a dark night; or, if it cannot be said that the court in so many words so directed the jury, yet it can be said that the

court left the jury free to make such pronouncement in this case, upon such a showing; and such pronouncement would not be good law, nor conducive to the public convenience or welfare. The court practically told the jury that if it appeared to them upon this trial that the sidewalks were free from obstruction, free from nuisance, and safe for travel, and the street at the point where plaintiff attempted to cross was burdened with a nuisance dangerous to the safety of a traveler (although this fact was not known to the plaintiff at the time), the jury could say that the plaintiff, in choosing the way she did, and not going upon these safer walks provided by the city, was guilty of contributory negligence. This conclusion could be based upon the simple fact that the night was dark, and the city had furnished no lights.

In this, it would appear to us that the jury were left to grope in darkness more grievous than that which surrounded the plaintiff at the time of her injury. At the time this instruction was read to the jury, the jury had knowledge of the fact, unknown to the plaintiff, that this dangerous obstruction rested upon the street at the point where plaintiff attempted to cross. Without light to guide them as to what the law is, touching the right of the plaintiff to cross a public street, it would naturally appear to them that, with this obstruction upon the street, this dangerous instrumentality imperilling travel upon the street, it would have been more prudent, on a dark night, for the plaintiff to have taken the sidewalk (which the court said was perfectly safe), than to have risked her safety by attempting to cross in the vicinity of this dangerous obstruction.

The appellant complains of the instructions of the court as a whole, in that they give undue prominence to matters (material enough to the controversy) which militate against the plaintiff's claim; that the court in its **4. TRIAL: instructions: undue emphasis on plaintiff's theory: error.** instructions failed to give a full and clear exposition of the law which governs the rights of the parties in the controversy. The

instructions complained of are substantially as follows: The court first told the jury that it was the duty of the city to keep its public streets in a reasonably safe condition for the passing of pedestrians along and over the same; then followed this by the statement:

"For this purpose, a city is required to construct sidewalks and street crossings for the convenience and safety of pedestrians, who, from necessity, or in the exercise of pleasure, desire to pass along and over said streets, or to cross the same. It is the duty of the city to keep such sidewalks and crosswalks in a reasonably safe condition for public travel. It has a right to establish curb lines along the streets, and to provide that the space between the curb line and the sidewalk, on each side of the street, shall be used as a parking, or *space, for lawn and trees*. But, under the law, foot travelers have a right to cross such parking or lawn, if they do so in the exercise of such care as a person of ordinary prudence and caution would exercise under like circumstances and conditions; but if they do not exercise such ordinary care in crossing such parking, and are injured by reason of a lack of such ordinary care, they are guilty of contributory negligence, and cannot recover." The italics are ours.

It will be noted that this instruction, while it states no bad law, would lead the mind to a wrong conclusion as to what the law really is. In the first part of the instruction, it rightly says that it is the duty of the city to keep its streets *in a reasonably safe condition*. The next sentence proceeds to state to the jury the part of the street to which the duty relates, and it says:

"For this purpose (that is, for the purpose of keeping the streets in a reasonably safe condition), the city is required to construct sidewalks and street crossings, etc., and to keep the same in a reasonably safe condition for public travel."

It says that the city has a right to provide a space between the curb line and the sidewalk for parking, or a space for lawn and trees, and that people have a right to cross the

parking. Nowhere does it say that this parking, over which people have a right to cross, must be kept in a reasonably safe condition for that purpose. It seems to limit the duty of the city, in keeping its streets in a reasonably safe condition for pedestrians, to the sidewalks and crosswalks; for, while it says that travelers have a right to cross the parking, it admonishes the jury that care must be exercised in attempting to cross such parking, as if there were a higher duty imposed upon one in attempting to cross the parking, than in using other parts of the street.

Again, in the second instruction, the court emphasizes the thought that the right of the pedestrian to travel is confined to the sidewalks and crosswalks; for it says to the jury:

"You are instructed that sidewalks are provided for the exclusive accommodation of foot travelers, and crosswalks are provided for the convenience and safety of such foot travelers to cross from one side of the street to the other, and, while foot travelers upon a street are not *compelled* to use sidewalks and crossings in crossing a street, you are instructed that if a person deviates from the sidewalk and street crossings that are provided by the city, in order to make the crossing of a street convenient and safe, the law requires of him the exercise of such care and prudence as a reasonably cautious and prudent man would exercise under like circumstances, and in respect to the darkness of the night, as are shown by the reliable evidence in this case to have existed when the plaintiff deviated from the sidewalk and street crossing provided by the city, and crossed the street at another place than that provided."

This emphasizes the fact again that the city had provided sidewalks and crosswalks; that it provided these for the convenience and safety of foot travelers, and that, while the travelers were not *compelled* to use the sidewalks and crosswalks, if they deviated from these ways provided by the city, and undertook to cross at any other point than those safe ways

provided by the city, the law required the exercise of such care and prudence as one should exercise who embarks on a perilous journey, known by him to be such.

The suggestion in the instructions, all through, could not help but convey to the mind of the jury the thought that, when the city had provided sidewalks and crosswalks for pedes· trians, it had practically done its full duty; and that, if a traveler, though having the right to do so, attempted to cross at any other point, he assumed special hazards, against which he must guard, and the care to be exercised by him must be that care which reasonably prudent persons exercise when they attempt to exercise a right involving peril. A mind unfamiliar with the rules which the court undertakes to announce in these instructions, would reasonably conclude· that the making of safe sidewalks and crosswalks for pedestrians rendered the street reasonably safe, so far as the city was concerned; that pedestrians had a right to cross the street at other points, but the city owed no duty to keep the street at the other points in a reasonably safe condition; that the pedestrians assumed the risk of crossing at other points, and were required to exercise that care and caution in doing so commensurate with the risk assumed. The court emphasizes the fact in this instruction that the city had provided sidewalks and crosswalks for the exclusive accommodation of foot travelers; that these were provided for the safety of foot travelers in attempting to cross from one side of the street to the other; that, while foot travelers were not *compelled* to use these conveniences provided for the safety of foot travelers, yet if they deviated from these safe sidewalks and street crossings, which were provided for the purpose of making the crossing of the street convenient and safe, the law required them to exercise care commensurate with the dangers that attended their act in attempting to cross at some point where the city had not and was not required to make the street reasonably safe.

The court further said: "There is no evidence whatever that the sidewalks and street crossings

5. MUNICIPAL CORPORATIONS: defective street: imprudence of passing over: jury's and injured person's viewpoint contrasted: contributory negligence.

provided by the city for the convenience and safety of the foot passengers were not in a reasonably safe condition for the passing of pedestrians along and over the same."

And it said to the jury: "Therefore, you are instructed that if you find from the evidence that the night on which the plaintiff crossed the street in question was very dark, and that it was imprudent for a person to attempt to cross the street at

6. MUNICIPAL CORPORATIONS: negligence: defects in street: known and unknown defect contrasted.

the point where the plaintiff did cross the street on account of the darkness, and that there was a safer way which she might have taken in going where she desired to go, she was guilty of contributory negligence."

The vice of this instruction lies in the fact that, after the evidence was all in, the jury were permitted to say that in their opinion, it was imprudent for the plaintiff to attempt to cross the street at the point where she did, because the evidence disclosed on the trial that there were sidewalks and crosswalks unobstructed and reasonably safe for travel; and at the point where plaintiff attempted to cross, there was a dangerous instrumentality left, into which she fell and was injured; and the night was very dark. The instruction ignored the fact that the plaintiff had no knowledge of the existence of this dangerous instrumentality; that there was no light to expose its location to the plaintiff; that she had reason to anticipate that the streets were free from obstruction; that she had no knowledge at the time of anything that would interfere with her safe passage across the street at the point where she attempted to cross.

The plaintiff's conduct is to be judged, not by subsequent developments, but by the conditions that confronted her at the time she attempted to act. The jury might well have

found, that, with this dangerous instrumentality resting in the line of travel, it was imprudent for her to cross the street in its vicinity on this dark night; that common prudence would have suggested to her that she follow those safe sidewalks provided by the city, rather than risk her safety in an effort to cross at this point, with the line of travel so obstructed. This instruction evidently intended to follow the rule laid down in a number of cases decided by this court, but the court failed to grasp the full import of the rule as laid down. That is this: Where the plaintiff *knew* that a walk was in bad condition, and, on account of the darkness, *knew* that it was imprudent to walk over it, and knew that there was another good and safe walk over which she might go to her destination, she was guilty of contributory negligence.

In this instruction, the want of knowledge of the plaintiff of the dangerous condition of the walk and the peril that attended her, is not taken into consideration, and it is left to the jury to say, not whether the plaintiff, in attempting to pass over this street with the knowledge that she then had, *knew* it was imprudent, but whether, in the judgment of the jury, it was imprudent for her to attempt to pass over it, with the knowledge of the facts disclosed upon the trial, which were not shown to be within the knowledge of the plaintiff at the time. It is not negligence *per se* for a person to pass over a street or sidewalk in the nighttime. A person has the right to assume that the city has done its duty in keeping its streets in order, and has a right to rely upon this assumption in using the streets. See *Keyes v. City of Cedar Falls,* 107 Iowa 509; *Robinson v. City of Cedar Rapids,* 100 Iowa 662. In the *Keyes* case it was said:

"The rule is well settled that a person has the right to rely upon the assumption that the city has done its duty, and it is not negligence for one to pass over a sidewalk at night. He is not bound to carry a light with him to see that there are no pitfalls in the walks that he contemplates using. Streets and sidewalks are designed for use at all hours of the day or

night, and it is not negligence for one to venture out after dark''—citing authorities.

In the *Robinson* case, it was said: ''The plaintiff had the right to rely upon the alley crossing being in a reasonably safe condition, unless he knew otherwise. He was not bound to anticipate a drop at the end of the sidewalk.''

The court in its instructions further emphasized the thought, suggested by defendant's testimony, that the plaintiff was running at the time she received her injury. The plaintiff testified that she was not. Upon this point, the court says: ''Plaintiff says that she was not running, but walking at a medium pace. Two witnesses, however, were called who testified that she said soon after her injury that she was running''; and the court tells the jury in the instruction that one of the witnesses testified that she heard the outcry of the plaintiff when she was hurt, and that she went down to assist her; that the plaintiff told her that she was running when she fell; that the other witness testified that, about half an hour after the accident, plaintiff said that she was running. The court also tells the jury that, in the first petition filed by the plaintiff, she stated that she ran out to the mail box on the street at about 9:30. Of course, this is not, in itself, error, but it tends to emphasize the testimony which contradicts the plaintiff that she was not running, and gives it undue prominence. The practice of setting out the testimony of witnesses in instructions is not to be commended. It gives undue prominence and importance to the particular testimony selected by the court. The court then stated that it was the duty of the jury to determine this question from the credible evidence, and said, ''If you believe from the evidence that an ordinarily prudent and cautious person would not, on a very dark night, when no street lights were burning, attempt to cross the street at a point other than the regular street crossing, and that such person, in the exercise of ordinary care, would not run in so crossing, then you must find that

the plaintiff was negligent''; and then followed this by this instruction: ''The alleged contributory negligence of the plaintiff does *not alone* turn upon the question of whether she was or was not running at the time the accident occurred,'' and said, ''Even though you find from the evidence that she was not running, it would be the duty of the jury to determine whether an ordinarily prudent and careful person would have crossed the street at the point where the plaintiff crossed, while walking at a medium pace, taking into consideration the darkness, and taking into consideration all the other evidence bearing upon the question as to whether she exercised reasonable care or not'', thus again upon this question of contributory negligence allowing the jury to say that, in their judgment, under the disclosures made upon the trial, it was imprudent for the plaintiff to cross the street at that time simply because the night was dark, and the city had furnished no lights, either at the place where the accident occurred or elsewhere, although the plaintiff did not know of the existence of the danger, or that the street was not reasonably safe for her passage, and although she had a right to anticipate that the street was in a reasonably safe condition.

The court again in its instructions said to the jury: ''A person who is injured by the mere negligence of the city in not keeping its streets in a reasonably safe condition for the passage of pedestrians cannot recover any damages therefor if she, by her own negligence, contributed to produce the injury or damage of which she complains'', and said to the jury that the city is not an insurer against accident, and again said to the jury: ''You are instructed that the mere fact that the plaintiff was injured would not justify you in giving her damages. . . . The city is not liable at all if it exercises ordinary and reasonable care such as a reasonably prudent and careful person would exercise under the same circumstances'',—thus apparently depreciating plaintiff's claim of negligence on the part of the city, warning the jury that the

city was not an insurer, speaking of the negligence charged as *mere negligence,* and speaking of the fact that plaintiff was injured as the *mere fact* that plaintiff was injured.

Of course, the court did, in its general instructions, tell the jury that it was their duty to determine the case fairly and impartially, and base their verdict upon the credible evidence in the case; that they should act without sympathy for either party, and should return their verdict in the case just the same as if all the parties were private persons; but, upon the whole, the instructions, we think, were very unfavorable to the plaintiff's cause, and had a tendency to depreciate her claim in the mind of the jury. Nowhere in its instructions did the court tell the jury that it was the duty of the city to keep the streets which were open for travel in a reasonably safe condition to the full width. Nowhere did the court tell the jury that it was not negligence *per se* for the plaintiff to cross the street without using the sidewalks and crosswalks. The thought running through the instructions is that, when the city had furnished sidewalks and crosswalks which were reasonably safe, the plaintiff, though having the right, did at her peril use the street at the place where she attempted to use it; and that the care which she was required to exercis was commensurate with the dangers which attended her passage over the street, other than at the crosswalk; and that this danger was measurably greater on account of the darkness, although the darkness enveloped the sidewalks and crosswalks, as well as the point where she attempted to pass.

There was error, also, in saying to the jury that, if they believed from the evidence that it was imprudent on account of the darkness, for a person to attempt to cross the street at the point where plaintiff did cross the same, without proof that there was any safer way that she might have gone on her errand *known to her* at the time. She did not know of the existence of this nuisance on the street, without which the peril would not be measurably greater in crossing the street than in going upon the sidewalk. The darkness being over

the whole city, there is nothing to show that the route pur-
sued by her would not have been as safe, and just as much
unattended by peril, as would the sidewalks or the cross-
walks; and she knew nothing of this peril.

It is not negligence *per se* for one to pass along a street
in the nighttime without a light, nor is it negligence *per se*
to then walk rapidly; and this is certainly true where an
injured party had no reasonable grounds for believing that
the city had been derelict in its duty in keeping the street
in a reasonably safe condition, and where, under the law,
she had a right to anticipate that it was in safe condition.  See
*Moore v. City of Burlington*, 49 Iowa 136; *Keyes v. City of
Cedar Falls*, 107 Iowa 509.  It has been frequently held by
this court that it is error for the trial court to emphasize
testimony from which an inference of negligence on the part of
the plaintiff may be drawn, and to omit all reference to tes-
timony establishing the opposite inference.  See 2 Thompson
on Trials, (2d Ed.), 2330; *McBride v. Des Moines City R. Co.*,
134 Iowa 398; *Philpott v. Jones*, 164 Iowa 730; *Richmond &
Co. v. Noble*, 143 Mich. 546 (107 N. W. 274).

It is next complained that the court erred in excluding
evidence showing complaint of present pain on the part of
the plaintiff.    This we think was error.    See *Gray v.
McLaughlin*, 26 Iowa 279; *Keyes v. City of
Cedar Falls*, 107 Iowa 509; *Patton v. Town
of Sanborn*, 133 Iowa 653.

7. EVIDENCE: per-
sonal injury:
present pain:
complaints.

On the whole record, we are inclined to
the opinion that substantial justice requires that this case be
reversed; and, for the errors pointed out, it is reversed, as to
defendants, City of Cedar Falls and Corn Belt Telephone
Company.—*Reversed.*

DEEMER, LADD and SALINGER, JJ., concur.