LEO ENGMAN, appellee, v. CITY OF DES MOINES, appellant.

No. 51097.

(Reported in 125 N.W.2d 235)

DECEMBER 10, 1963.

Leonard C. Abels, Anthony T. Renda, Leonard M. Flander, Lee Gaudineer and L. Michael McGrane, all of Des Moines, for appellant.

Raymond Rosenberg and Richard L. Pinegar, both of Des Moines, for appellee.

STUART, J.—Plaintiff brought action against the City of Des Moines to recover damages for personal injuries alleged to have been sustained when he tripped over a defect in a street and fell. The jury returned a $25,000 verdict for plaintiff and defendant has appealed assigning several errors.

I. Defendant's first two assigned errors are based upon the proposition that defendant's duty to plaintiff was limited to keeping the street in reasonably safe condition for vehicular traffic, even though he was a pedestrian. Error is alleged in failing to direct a verdict for defendant on the ground plaintiff did not prove a breach of such duty. Error is also predicated upon the failure of the trial court to instruct the jury that this was the duty defendant owed plaintiff.

We are unable to agree with defendant's basic proposition. In Abraham v. Sioux City, 218 Iowa 1068, 1070, 250 N.W. 461, 462, and Pietz v. Oskaloosa, 250 Iowa 374, 92 N.W.2d 577,

1042

we say a city is required "to exercise reasonable and ordinary care to maintain its streets in a safe condition for travel in the usual and ordinary modes of travel." We think this rule is sound and covers the factual situation here existing.

█ The accident happened in the 700 block on Fifty-fourth Street, which is a dead-end street terminating at the Waveland Golf Course. This is a good residential area. There are no sidewalks or crosswalks. Parking is permitted on both sides of the street. The accident occurred after dark. The street lighting at this location is dim. The jury could find the hole alleged to have caused the fall was in the middle of the street and was 12 to 16 inches in diameter and 3 to 4 inches deep with straight sides. Plaintiff was carrying a large glass tabletop wrapped in heavy paper from his station wagon to the Brody residence. Plaintiff tripped over the hole as he was crossing the street. The City had been notified of its deteriorated condition.

Under these circumstances the jury could find the City should have anticipated that this street would be used by persons on foot and that walking would be one of the ordinary modes of travel upon it. The City could not then discharge its duty to the public by maintaining it as if it would be used only by vehicular traffic.

█ 40 C. J. S. 294, Highways, section 254, states: "The duty to keep the highway in a reasonably safe condition means safe for general or ordinary travel, or use for any lawful and proper purpose, including use for both pedestrians and vehicles."

This court in Nocks v. Incorporated Town of Whiting, 126 Iowa 405, 406, 102 N.W. 109, 106 Am. St. Rep. 371, said:

"That cities and towns are required to keep all streets and public places within their limits, and which are open for public use, free from dangerous obstructions and pitfalls, and in a condition of reasonable repair, is the unquestioned rule of law in this State. And the requirement is broad enough to cover not only the purposes of public travel, but any use to which the street may be subjected not in itself violative of any established rule of law, and hence improper and illegal."

There is no claim plaintiff was acting illegally in crossing

the street at the location where he fell. The right to cross a street at a place other than a crosswalk is discussed in Middleton v. City of Cedar Falls, 173 Iowa 619, 626, 153 N.W. 1040, 1044:

"The act of the plaintiff in attempting to cross the street on this night did not, in and of itself, constitute negligence. Darkness had settled down upon the entire city. Darkness enveloped the sidewalks and crosswalks as well as the street at the point where plaintiff attempted to cross. It is the duty of the city to keep its streets in a reasonably safe condition for travel in the nighttime, as well as in the daytime. If it leaves that upon its streets which constitutes a nuisance, interferes with public travel, endangers the safety of the passengers, it cannot complain of the conduct of a citizen who, without knowledge of this condition, attempts to use the street in the nighttime; nor can it predicate negligence on the part of the user of the street in the nighttime on the ground that he knew that the night was dark and the city had failed to furnish any lights to guide him in his journeyings, when it is not shown that he knew of the peril. The right to use the streets and the duty to keep the streets in reasonably safe condition for travel, the duty to put signals and warnings at a point where the street is dangerous for travel, are all concurrent. This fact must not be lost sight of, that, in attempting to cross at the point where she did, the plaintiff was within her right."

While the above case discusses principally the contributory negligence of the plaintiff, it points out her rights and the duties of the city.

Beardmore v. Incorporated Town of New Albin, 203 Iowa 721, 723, 211 N.W. 430, 431, a crosswalk case, recognizes that the duty of the city to maintain a sidewalk does not involve the same details as maintenance of a street. We say:

"It is undoubtedly true, as contended by the appellant, that a difference should be recognized in the details of the defendant's duty in the maintenance of a street crossing, as compared with the details of its duty in the maintenance of its sidewalks. In this case, teams with sleds were using the streets, and were entitled to so use the same. Such use of the streets

would naturally encroach upon the cleanliness of the crossing and cast more or less snow thereon. Due allowance should be made for such a situation, in determining the nature of defendant's duty in the maintenance of a safe passageway for pedestrians."

The same reasoning may be applied to maintenance of the street as compared with maintenance of a sidewalk. Of course, due care in the maintenance of streets does not require them to be kept as smooth, clean or as free from defects as sidewalks. Streets are intended primarily for vehicular traffic and sidewalks for pedestrians. The City's duty and a pedestrian's standard of care in using the streets are affected thereby. The court so told the jury in instruction No. 9½ which reads:

"Although a pedestrian has the lawful right to travel upon the streets at a point of his own choosing, you are instructed that the primary use for which a street is designed, other than at crosswalks, is for vehicular traffic and that such use by pedestrians is secondary thereto. Therefore, a pedestrian, meaning the plaintiff in this case, must consider such fact in the exercise of the care of a careful and prudent person when traveling upon the street. The duty of the City as heretofore stated is to keep the street free from hazardous conditions or to give warning by appropriate signal device if such conditions exist, and this duty exists with reference to pedestrians as well as to vehicular traffic. However, in considering whether the City exercised reasonable care as defined in these instructions, you should consider that the use of the streets is primarily intended for vehicular travel. You are instructed that the term 'traveler' as used in these instructions includes a pedestrian."

The instruction covers both the duty of the City to a pedestrian in a street and the degree of care required by a pedestrian for his own safety when walking in the street. While it would have been better if these matters had been treated in instructions dealing with the respective duties of the parties, the instructions read as a whole embody the principles which we believe to be sound.

A City cannot discharge its duties by maintaining the

streets so that they are reasonably safe for vehicular traffic only, when it could reasonably be expected that they would also be used by pedestrians. The jury could find the City should have anticipated people on foot would be using this particular street and that it was negligent in not repairing a hole of this size of which it had knowledge. No error was committed in failing to direct the verdict or to instruct as requested by the plaintiff.

■■ II. Defendant assigns as error the failure to direct a verdict in its favor upon the ground plaintiff did not prove his freedom from contributory negligence. In considering the propriety of a directed verdict the evidence is to be viewed in the light most favorable to plaintiff. The issue of contributory negligence is ordinarily to be determined by the jury. These propositions are so well established, citation of authority is not necessary. Rule 344(f), paragraphs (2), (10), Rules of Civil Procedure.

■ There was evidence from which the jury could have found plaintiff was unfamiliar with this particular portion of Fifty-fourth Street which was dimly lighted. He was carrying the wrapped glass in a manner which would permit him to see where he was walking and to protect himself. (He was not cut by the broken glass.) He testified he was looking ahead, where he was going along the surface of the street. His eyes were not fixed upon any particular object but roaming around the way a person would normally do. He was walking cautiously and did not see anything in his path which would cause him to fall. This is sufficient evidence to generate a jury question on the issue of contributory negligence.

The authorities cited by the City are not pertinent as they all deal with situations in which plaintiff had knowledge of existing defects or dangerous conditions of which there is no evidence in this case. Plaintiffs in these cases were charged with contributory negligence per se in attempting to cross a known dangerous condition even though they thought they could do so in safety. They preceded Beach v. City of Des Moines, 238 Iowa 312, 26 N.W.2d 81, and Atherton v. Hoenig's Grocery, 249 Iowa 50, 86 N.W.2d 252. In any event there is more established than just the mental state of plaintiff.

III. Defendant claims the trial court committed error in instructing upon general propositions of law only, which allowed the jury to engage in speculation and conjecture. The main force of defendant's argument is again directed to the refusal of the court to limit the City's duty to maintaining the streets in a reasonably safe condition for vehicular traffic only. Defendant's requested instructions Nos. 1, 2, 4 and 5 all embodied this claim as a proposition of law. This is not the law and they were properly refused.

■ The instructions adequately state the law applicable to these facts. Defendant urges instruction No. 9½, set out above, does not define the duty of the City to a pedestrian walking in the street, but only plaintiff's duty to exercise care for his own safety while walking in the street. We do not so interpret this instruction. The first two sentences of this instruction refer to the plaintiff's duties in exercising the care of a careful and prudent person. The remainder of the instruction commencing with "The duty of the City as heretofore stated" refers to the duty of the City. As stated before, it would have been in better form if the first part of the instruction had been included in instruction No. 7 on contributory negligence, and the remainder of the instruction had been included in instruction No. 6 defining defendant's duties. However, the instructions, as a whole, do correctly advise the jury as to the law in sufficiently specific terms under the facts.

■ IV. Defendant claims the trial court erred in instructing the jury it could measure plaintiff's contributory negligence by the duty owed him by the defendant. If the jury were so instructed it clearly would be error. Pappas v. Evans, 242 Iowa 804, 814, 48 N.W.2d 298. Defendant's contention is based upon its interpretation of instruction No. 9½ referred to above. We have already expressed our different interpretation of this instruction. The first two sentences in effect tell the jury the plaintiff must keep in mind that the streets are intended primarily for vehicular traffic and exercise care for his own safety commensurate with that knowledge. The remainder of the instruction tells the jury they should consider that the streets are primarily intended for vehicular traffic in determin-

ing whether the City exercised reasonable care in their maintenance. The duties are separately defined although included in the same instruction.

V. Defendant predicates error on the instruction which informed the jury it could have discharged its duty to plaintiff if it had warned him of the defect in the street. There was no evidence of any attempt to warn plaintiff or the public of the defect in the street and the jury should not have been so instructed. However, any prejudice would be against the plaintiff and not the defendant, for as the City says: "Therefore, the duty, if any, owed by the defendant was the greater duty to actually repair and not the less strenuous duty of merely warning." Since the instruction is favorable to the City, it was not prejudicial.

VI. Error is assigned in instructing the jury the plaintiff could recover the reasonable value of past lost wages not to exceed $1200. Defendant claims there is no evidence to support the submission of this element of damage to the jury. We disagree. There is evidence plaintiff was confined in the hospital and at home for 60 days following the injury. Following an operation on the ulnar nerve, he was confined in the hospital and at home for 24 more days for a total of 84 days or 12 weeks. His wages at the time of the injury were $100 per week. The corporation, The House of Glass, in which he was one of the major stockholders, provided sick-leave benefits which paid his salary when he was off work. There was also evidence that he wore a body cast for an additional half month and worked part time, only, for many weeks. There was no error in submitting the issue of past lost wages and the limitation of the amount to $1200 was favorable to the defendant.

The issue that such element of damages was not specifically pleaded was not raised in the trial court and we cannot consider it here. Defendant did not claim it was entitled to credit for the sick-leave benefits paid. This question is not considered.

VII. Defendant argues the verdict is so large that it must have been the result of passion and prejudice and does not effectuate justice. It asks for a new trial, or, in the alternative,

a remittitur. The question of excessive damages in a personal injury case depends upon its own facts and the comparison of verdicts is of little value. Stevenson v. Abbott, 251 Iowa 110, 99 N.W.2d 429; Hamdorf v. Corrie, 251 Iowa 896, 101 N.W.2d 836.

Plaintiff offered his own testimony and that of three qualified doctors. The defendant did not introduce any testimony on the issue of damages.

At the time of the accident, plaintiff was 48 years of age. He was engaged in the business of designing, cutting and grinding glass and mirrors for residential and commercial use. He was a major stockholder in the corporation which employed him. His earnings were $100 per week.

Plaintiff's left shoulder was broken in the fall. In order to set the bones, the doctor performed an open reduction, fixing the placement with a metallic screw. Plaintiff wore a body brace and an airplane cast for two and one-half months. He developed a severe burning pain in his left elbow and hand which indicated a causalgia nerve injury to the ulnar nerve, commonly identified as the "crazy bone" in the elbow. A claw hand developed, which was corrected by treatment and exercise. After the shoulder healed and the cast was removed a second operation was performed transplanting the ulnar nerve in the region of the elbow. This operation furnished relief from the burning sensation in the hand but the pain in the elbow persisted. In addition to the loss of wages discussed in the prior division, plaintiff incurred medical expenses of $1950.31.

Plaintiff, who is right-handed, testified he cannot use his left hand as well since the accident. He has not been free of pain a single day, which has affected his ability to use his left arm. The pain is severe, "like putting your elbow on a hot stove and wanting to take it off and somebody is holding it on there." It is very sensitive to the touch. He does not list any specific functions which he has not been able to perform since the injury.

The doctors state that all symptoms and conditions are consistent with an injury to the ulnar nerve and confirm the severity of the pain of a causalgia nerve injury. There is visible atrophy of the muscles of his left arm, shoulder and little finger.

They fix the extent of his permanent disability at about 25 to 30 percent of the total function of his left arm. They also recognize that severe pain can affect the individual in his ability to carry on with everyday activities. He obtained a good result on his shoulder.

Plaintiff has worked steadily from February 20, 1960, which was four and one-half months after the accident. In June 1961 the House of Glass "folded up". He has worked in the same type of business since July 1961 as manager, designer and salesman. He was paid by his employer $100 per week from July 1961 to January 1962. He has earned some small commissions.

Assuming the jury allowed the full $1200 for past lost wages and $1950.31 for medical expenses, $21,849.69 was allowed for past, present and future pain and suffering, total temporary disability, and partial permanent disability including impairment of earning capacity. This amount appears to exceed the limits of fair compensation for a 25 to 30 percent functional disability of his left arm, a pain which has caused him to lose little time from his work and has not affected his actual earnings. We do not however consider it to be so large as to show passion and prejudice.

 We said in Ferris v. Riley, 251 Iowa 400, 414, 101 N.W.2d 176, 184:

"If, although passion and prejudice does not appear, the verdict is so large that it appears to be beyond the limits of fair compensation for the injuries shown, it is within our power, in fact it is our duty, to correct the error by requiring a remittitur on pain of a grant of a new trial. We must take care that we do not invade the province of the jury in so doing; but we have often held that such procedure is required to overcome a manifest mistake in the allowance made."

 We therefore conclude a verdict and judgment of $19,000 is the largest amount which the rule of fair compensation will permit and that any amount in excess thereof is excessive. It is the judgment of this court that the case is affirmed, on condition that the plaintiff shall, within thirty days from the filing of this opinion file a remittitur of all the judgment in

excess of $19,000 with interest on such excess; otherwise a new trial will be granted.—Affirmed on condition.

HAYS, LARSON, THOMPSON, PETERSON and SNELL, JJ., concur.

GARFIELD, C. J., and THORNTON and MOORE, JJ., concur, except they dissent from Division VII and would affirm.