GEO. W. BALL, Appellee, v. N. W. JAMES et al., Appellants.

**EVIDENCE:** Parol as Affecting Writing—Collateral Oral Agreement
1  —Showing Inducement. Receiving in evidence an oral agreement, collateral to and contemporaneous with a written one, showing the

*inducement* for entering into the written one, is not violative of
the parol evidence rule, the writing being silent as to such induce-
ment.

PRINCIPLE APPLIED: Action by an administrator to collect
on a note. The maker pleaded that, at the time of the execution of
the note in question, and another note, and as a part of that trans-
action, the payee orally agreed with the maker that, if the maker
would take the money and execute the notes and mortgage and pay
to the payee the six per cent. interest thereon annually during the
lifetime of the payee, she (the payee) would make a will and
bequeath to the maker the notes or the amount of the notes, and
that in pursuance of this oral agreement the notes and mortgages
were executed. No such bequest appeared in the last will of said
payee. No consideration was recited in the notes. *Held,* the oral
agreement was provable.

**CONTRACTS:** Consideration—Contract to Will Property. A con-
2 tract by the payee of a note to devise said note (together with one
formerly, executed), or the amount thereof, to the maker, is sup-
ported by a sufficient consideration in the maker's agreement to
take the money and execute the note and mortgage and pay to
payee, during her lifetime, interest in excess of what payee could
then get from anyone else.

**WILLS:** Contract to Devise—Evidence. Evidence reviewed, and
3 held sufficient to establish a contract to bequeath certain property
to claimant.

**WITNESSES:** Privileged Communication — Attorney Acting as
4 Scrivener Only. A communication by a testator to an attorney
as to the provisions of a will is not privileged when the attorney
had nothing whatever to do with the will, or anything relating
thereto, beyond copying it from a rough draft made by his partner.

**TRIAL:** Reception of Evidence — Proper Reception — Subsequent
5 Incompetency Shown—Procedure. Testimony rightly received,
as the record then stands, remains in the record for consideration,
even though incompetency of the witness is later made to appear,
*unless such testimony is stricken on motion.* So held where, after
testimony was received, it was made to appear on cross-examina-
tion that the witness was, *arguendo,* incompetent.

**PAYMENT:** Recovery of Payments—Mistake of Fact—Involuntary
6 Payments—Ignorance of Existence of Evidence. Payments made
in ignorance of the existence of evidence which would establish non-
liability may not be recovered on the plea of mistake of fact, or
that the payments were involuntary by reason of such ignorance.

**WILLS:** Contract to Devise or Bequeath—Breach—Damages. Damages may be recovered for breach of a contract to devise or bequeath property.

**EXECUTORS AND ADMINISTRATORS:** Claims—Limitation for Filing—Equitable Relief—Unsettled Estates. Claims filed against an *unsettled* estate after the expiration of 12 months from the giving of notice by the executor of his appointment need not be supported by a *strong* showing of equitable circumstances entitling to relief from the statute. (Sec. 3349, Code, 1897.) In such case, the question is quite largely one of conscience and fair dealing.

PRINCIPLE APPLIED: Defendant, threatened with suit on a note given to deceased, paid the note. In truth, she gave the note under an agreement that she would pay the interest thereon during the life of payee, and that payee would make a will and bequeath said note to defendant. Payee died without making such a will. Defendant paid the note, in the belief that no sufficient competent evidence of said agreement was in existence. Later, defendant discovered that prior wills of deceased recognized the agreement. But by this time, the 12 months' limitation on filing claims had expired, *but the estate remained unsettled.* Claim was promptly filed after discovering this latter evidence. *Held*, the showing was sufficient to avoid the statute.

*Appeal from Johnson District Court.—*R. P. HOWELL, Judge.

THURSDAY, JUNE 29, 1916.

ACTION on note. Both parties appeal, the notice of defendant having been first served. The opinion states the facts.—*Affirmed* in part.—*Reversed* in part.

*Milton Remley,* for appellants.

*Ball & Ball* and *Wade, Dutcher & Davis,* for appellee.

LADD, J.—Martha I. Fickey died testate, March 11, 1911. Her will was duly probated and plaintiff appointed executor thereunder. A legacy of $600 and a breastpin were all that was left to the defendant, Mrs. N. W. James, a niece of decedent's. In this action, the executor sought to recover judgment against defendants on their promissory note to decedent of $1,000, dated May 10, 1904, payable two years after date, and prayed that the mortgage securing the payment be fore-

closed. The defendants admitted the execution of both instruments but averred that: "At the time the said note was executed, there was also executed another note in the sum of $2,500, and aver the fact to be, that the said Martha I. Fickey, being the aunt of defendant, Nancy W. James, had the sum of $3,500, for which she did not find a ready borrower; that she requested the said defendant to take the said money and pay her six per cent interest thereon and give two notes and mortgage as above stated; that, as an inducement to give the said notes, the said Martha I. Fickey verbally agreed that she would leave the said money to the said Nancy W. James at her death and that the principal would never have to be paid. She agreed to make her will leaving to the said Nancy W. James the said sum, she stating at said time that all she wanted on it was the interest as long as she lived, and in pursuance of the said agreement, the said defendants executed the said note and mortgage, relying upon the said Martha I. Fickey to execute her will devising to the said defendant Nancy W. James, the said two notes, and that in pursuance of said agreement, the said Martha I. Fickey did execute her will and made provisions therein leaving to the said Nancy W. James the sum of $3,500, as evidenced by the said notes as aforesaid, and in wills drawn subsequent to the execution of the first will after the said agreement was made, the said Martha I. Fickey, recognizing her obligation thereto under the said agreement, made provisions in each will to carry out the said verbal agreement as aforesaid until the execution of the last one which has been admitted to probate; but shortly before her death the said Martha I. Fickey wrongfully and in violation of her said agreement changed the provisions of her said will so as to deprive the said defendant, Nancy W. James, of her rights under the said contract."

Defendants denied "that there is anything due upon said note sued on." By way of cross-petition, they alleged that the estate had not been settled and ample funds remained in the hands of the executor to satisfy defendant's claim; and.

making the averments of the answer a part of the cross-petition, they further alleged that, on the date of the note sued on, they also executed a note of $2,500 to decedent, payable two years thereafter, bearing interest at the rate of six per cent per annum, and that, upon learning that decedent made no provision in her will leaving Mrs. James the amount thereof, with the previous note, and that the executor had no knowledge of any previous wills containing such provision, she concluded that there was no evidence of decedent's agreement, and thereupon she paid the executor said note and interest, amounting to $2,562.50; and that such payment was made in ignorance of the real facts. They further aver that:

"By reason of the change of the provisions of her said will by omitting from her will the provisions aforesaid, which was admitted to probate and which will was executed shortly before her death, the said defendants have been damaged in the sum of to wit, $2,562.50, in addition to the amount claimed on the note sued on."

After asserting that no prejudice had resulted to the estate by the course pursued, they prayed that the note sued on be canceled, and the sum of $2,562.50 be allowed as a claim of the third class against the estate. The executor demurred to the answer and cross-petition, on the grounds: (1) That the parol agreement alleged would tend to vary the provisions of the notes and mortgage, and for this reason might not be proven; (2) that the alleged oral agreement was without consideration; (3) that defendants may not recover the amount paid on the note, for that such payment was voluntary, ignorance of the existence of evidence not being a mistake of fact; and (4) that the counterclaim is barred by the statute of limitations. The third and fourth grounds were sustained as to the cross-petition, and otherwise the demurrer was overruled. On hearing, the petition was dismissed.

I. The plaintiff's appeal may be disposed of first. It is contended that the evidence of the agreement in parol was

inadmissible, in that it tended to vary or contradict the terms of the note and mortgage. We are not

**1. EVIDENCE: parol as affecting writing: collateral oral agreement: showing inducement.**

inclined to this view. These instruments were complete in themselves. The alleged oral undertaking neither added thereto nor detracted therefrom. It did not purport to vary either. It served merely as an inducement to the entering into the written contracts on the terms stated therein. The law is well established that there may be one contract providing for another, or a contract may be partly in writing and partly in parol. *Sutton v. Weber,* 127 Iowa 361; *Sutton v. Griebel,* 118 Iowa 78; *Oakland Cemetery Association v. Lakins,* 126 Iowa 121. Were it something additional to the payment of money sought to be exacted from defendants, the evidence might be inadmissible; but neither the note nor the mortgage recites the consideration, and, though this is presumed as between the parties, it is subject to proof, and the evidence that, in addition to an amount of money loaned, there was an executory agreement, in no manner violates the rule excluding parol evidence tending to vary the terms of a written instrument. The oral agreement was that the others, that is, the note and mortgage, should be executed for money loaned on terms agreed to, and in no manner affected the validity of or changed the terms of either.

II. Nor is there ground for saying that the agreement to make the will was without consideration. The decedent had money on hand for which there was no demand save at 4 per cent, paid by the banks. To induce

**2. CONTRACTS: consideration: contract to will property.**

Mrs. James to borrow at the rate of 6 per cent per annum and to make use of it during decedent's life, the alleged agreement was made; and, as she so understood, to do this was a valuable consideration for the alleged promise to execute a will. *Harlan v. Harlan,* 102 Iowa 701; *Carraher v. Allen,* 112 Iowa 168; *Daily v. Minnick,* 117 Iowa 564; *Mail & Times Co. v. Marks,* 125 Iowa 622; *Moench v. Hower,* 137 Iowa 621; *Har-*

*ris-Emery Co. v. Howerton,* 154 Iowa 472; *Kenigsberg v. Reininger,* 159 Iowa 548.

III. The evidence discloses that James was a photographer and was frequently assisted by his wife. The latter testified that, shortly before May 10, 1904, decedent called at the gallery; that James was in the dark room,

3. WILLS: contract to devise: evidence.

and later her father, Judge Fairall, came in; that thereupon Mrs. Fickey said to him that she wanted Mrs. James —

"To take $2,500 that she had that had been paid in, and she wanted me to take that money and make out of it what I could, and she told him that this money had been paid in, she hadn't expected it then, she thought the parties were going to keep it longer, and she wanted to put it where she could get her six per cent interest; she said she didn't care to leave it in the bank and only get four per cent; she couldn't live on four per cent, and she wanted me to take that money . . . and she told him that she didn't care for the principal, all she wanted was interest on that money while she lived . . . and she said that we owed her then a $1,000 . . . and if I would take this $2,500 and pay her the six per cent interest and do it as prompt as we always had . . . if I would pay her interest money as prompt as we had always paid it before, that that money would be mine at her death and that her will would state that."

She also testified that, a few days later, she and her husband executed the note. Her husband testified that about the same time he heard decedent say to his wife that —

"She had $2,500 paid in she said she had no place for it, and she wanted Nan, Mrs. James, to take it. Nan said, 'I don't believe I want to go in debt any more.' She says, 'You need never pay it.' She says, 'If you pay your interest as prompt as you always have paid me,' she says, 'you can have it and I will leave it to you in my will, all you got to do is pay the interest prompt as you always have done.' Q. Was anything said in reference

to a note that had been given when she loaned a $1,000 before? A. Well, I suppose that is what she had reference to if we pay the interest on the $2,500 as prompt as we had always paid it before, she said we needn't pay that $1,000 or the $2,500 at her death; she would leave it in her will to Nan. . . . Q. What did your wife say in regard to that? A. She didn't like the idea of going in debt but she thought she would later, and in a day or two she decided to take it, or possibly two or three days. Q. Question is what she said to Mrs. Fickey at that time. State whether the proposition was restated several times by Mrs. Fickey or not? A. She says this: 'You will never have to pay.' Q. While they were talking,—after they talked the matter over,—state whether Judge Fairall, your wife's father, came in? A. He did. He came into the operating room where Mrs. Fickey was. Mrs. Fickey said to Judge Fairall that she had $2,500 and no place for it and wanted Nan to take it. She said she would leave it to Nan in her will with the other $1,000 that we had that time owed her. Q. You say leave it to her? A. Leave it to her in the will, provided we paid the interest promptly as we always had. Q. Now, you may state what Judge Fairall said in the presence of Mrs. Fickey? A. He told Nan to take it. Q. Did Mrs. Fickey give her the $2,500? A. Yes, she loaned it to Nan and took a note and mortgage. Q. You spoke of a $1,000 note that had been given before? A. Yes. Q. State whether that was renewed on the same date the $2,500 note was dated. A. I think it was.''

Each witness testified to not having participated in the conversation by such witness related; and their evidence was somewhat corroborated by the circumstances that, in two wills subsequently made, decedent bequeathed $3,500, secured by mortgage, to Mrs. James, and with reference to one of these said, according to the testimony of the scrivener, with reference to this bequest: ''We had an understanding by which she was to pay me the interest as long as I lived,'' and after that she wanted her to have the mortgage. On the other

hand, it was made to appear that the decedent had trusted defendants to record these mortgages, and before doing so they had executed another mortgage of $2,000 to the Johnson County Savings Bank and recorded it first. Upon her discovery of this, and to satisfy her, the defendants executed another mortgage on the store building which belonged to James. Subsequent to this, she made another will, leaving to Mrs. James only $600. In a contest over the admission of this will to probate, James had testified to being indebted to her about $3,500, without mentioning the conditions on which incurred. It also appeared that decedent had planned to invest the money she would receive from the notes in bank stock. The note for $1,000 was a renewal of a note previously given, but the $2,500 note was then given upon the receipt of that amount of money. This is all the evidence bearing on the issue. Judge Fairall and Mrs. Fickey departed this life prior to the trial, so that no direct evidence of the transaction was obtainable. While defendants necessarily relied on their testimony of her declarations in conversations not participated in by them, the circumstances were such that there was none other competent to speak, and plaintiff necessarily relies somewhat upon inherent probabilities, or upon probabilities of what defendants have testified to, comparisons thereof with other evidence, and what might naturally be expected under like circumstances. The wills prepared by Zmunt had a tendency to show decedent's purpose at the time, and his testimony strongly corroborated the evidence of defendants. That the mortgages were not recorded tended to confirm rather than discredit the theory of the defense, for no objection was raised until another mortgage had been placed on record. But for this, decedent would doubtless have been content to hold without recording, since release was to be effected by will. The parties are shown to have been on good terms, and quite naturally Mrs. Fickey was interested in her brother's daughter. Doubtless she then intended to leave her an amount equal at least to

the notes executed, and, to relieve her of the trouble of keeping the money out, at a rate of interest ample to assure her a comfortable support, she might well have proposed and entered into the agreement as pleaded in the answer. That the notes were drawn payable two years after date is not inconsistent with the agreement alleged; for if these were not mature at the payee's death, this would not prevent their cancellation by will, and if they matured before, interest might be paid promptly, notwithstanding the notes were past due, or they could be renewed. The alleged agreement was concerning the use of the money and the payment of a specified rate of interest while the payee lived, and not as to how the receipt of the money and the obligation to pay such interest should be evidenced. The suggestion that there was no evidence of Mrs. James' acceptance of Mrs. Fickey's proposition merits no attention. James testified that she decided to accept, and this is to be inferred from the circumstance that she took the money. Upon a thorough study of the record, we are satisfied that the contract pleaded was established by the evidence adduced. Of course, such allegations are to be cautiously scrutinized, as is the evidence adduced to sustain it, but when found to have been established must be accorded full effect by the courts. Whether the contract and its breach were properly pleaded as a defense, instead of by way of counterclaim, is not touched in the briefs, and as to that no opinion is expressed. The issues raised were rightly decided, and the decree dismissing plaintiff's petition is approved.

IV. Zmunt, who prepared Mrs. Fickey's will, was an attorney, and at the time the partner of Judge Fairall. Fairall had made a draft of the instrument, but, as he was a beneficiary thereunder, she had Zmunt prepare another, with such changes as she might desire to make. In comparing it with the draft by Judge Fairall when the bequest to Mrs. James was reached, Zmunt testified that

**4. WITNESSES:** privileged communication: attorney acting as scrivener only.

decedent had said that there was an understanding that she was to have the interest as long as she lived and after that she wanted Mrs. James to have the mortgage. The witness further said that he had prepared another will for her, containing a like provision for Mrs. James. An objection was interposed, on the ground that the witness might not disclose confidential communications received by him as attorney from the decedent as his client.

A sufficient response is that, up to this point, there was no showing that he had acted in the capacity of her attorney. He had merely copied the will drawn by Judge Fairall, and may have drawn one later with like provisions, but it did not appear that he had been consulted as attorney. In so far as appeared at the time objections were interposed, he acted merely as scrivener, and objections were rightly overruled. On cross-examination, he testified that she consulted him about making the wills, but there was no motion to strike the evidence which had been rightly received at the time offered. In this state of the record, the evidence was and is for consideration. *Stoddard v. Kendall,* 140 Iowa 688; *Mueller v. Batcheler,* 131 Iowa 650; *Ross v. Ross,* 140 Iowa 51.

5. TRIAL: reception of evidence: proper reception: subsequent incompetency shown: procedure.

V. The defendants' appeal involved the rulings on the demurrer. Had the cross-petition merely alleged an oral agreement and the borrowing of the money in pursuance thereof, as did the answer, and, further, that payment of $2,500 and interest was made in ignorance of facts subsequently ascertained, such ignorance would not tend to establish a mistake of fact, or that the payment was not voluntary, and, if this were all, the ruling of the district court must have been approved.

6. PAYMENT: mistake of fact: involuntary payments: ignorance of existence of evidence.

Something more is to be found in the cross-petition, however, which must have been overlooked by the trial court;

i. e., the allegation, in substance, that, by the omission from the

will of the provision she had agreed to insert,

**7. WILLS: contract to devise or bequeath: breach: damages.** defendants had been damaged in the sum of $2,562.50, for which judgment was prayed.

An agreement based on a valuable consideration to make a will in favor of another is valid, and damages are recoverable on its breach. *Bird v. Jacobus,* 113 Iowa 194; *Brandes v. Brandes,* 129 Iowa 351; *Baker v. Syfritt,* 147 Iowa 49; *Mueller v. Batcheler,* 131 Iowa 650. As seen, the promise, if made, was based on such consideration, and the court erred in sustaining the third ground of the demurrer to the cross-petition.

VI. The fourth ground of the demurrer was that the facts, as pleaded, disclosed that the cause of action alleged in the cross-petition was barred by the statute of limitations.

If so, this must have appeared on the face

**8. EXECUTORS AND ADMINISTRATORS: claims: limitation for filing: equitable relief: unsettled estates.** of the cross-petition. The record does not disclose the month or day when the petition or cross-petition was filed, though both were filed in 1912. The will was admitted to probate in 1911, and probably the claim for damages was asserted more than twelve months after the publication of notice of the executor's appointment; but as the estate was unsettled, a strong showing of peculiar circumstances entitling to equitable relief was not required. See Section 3349, Code, 1897. *Johnston v. Johnston,* 36 Iowa 608. Defendants alleged that they were not informed that in two wills executed by decedent she had provided for the satisfaction of the mortgages, and the executor claimed to have no knowledge thereof, and defendant Mrs. James paid the $2,500 mortgage in the belief that there was no evidence of the oral agreement, other than such testimony as defendants might give, notwithstanding the prohibition of Section 4604 of the Code. Upon ascertaining the facts concerning the wills, the cross-petition was interposed. We think the delay sufficiently excused. If the pleaders are to be believed,

Mrs. James had a valid cause of action, claim on which she refrained from filing within the year, because of lack of competent evidence, but which she did file as soon as she had ascertained facts which, in connection with proof of declarations, might be sufficient to establish her claim. Manifestly, this satisfactorily explained her delay, and, as we think, in fairness and good conscience entitled her, in view of the condition of the estate, to a hearing on the merits. This is all that is exacted to show "peculiar circumstances" which "entitle the claimant to equitable relief" under Section 3349 of the Code. Such a case as will warrant relief in equity is not contemplated. What is contemplated is that the delay beyond the period fixed by statute for filing claims be so excused and explained as that, when considered in connection with the claim asserted and the condition of the estate, good conscience and fair dealing demand that a hearing on the merits be accorded the claimant. Such was the showing here, and the court erred in sustaining the fourth ground of the demurrer. Other matters are mentioned but not argued, and do not call for elaboration. Our conclusion is that on plaintiff's appeal the decree should be affirmed, and on defendants' appeal the ruling in sustaining the demurrer should be reversed.—*Affirmed* in part.—*Reversed* in part.

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.