HOMER HILL, Appellant, v. JOHN AJ. MAY, Appellant, et al., Appellee.

APRIL 3, 1928.

*Sullivan & Sullivan,* for Homer Hill, appellant.

*Yoran & Yoran,* for John Aj. May, appellant, and Orpha L. May, appellee.

KINDIG, J.—It is not denied by John Aj. May and Orpha L. May that they signed the written instrument sued upon, but the legal battle is waged over the: First, defenses interposed concerning the nature of the delivery, the consideration for each maker, the conditions of payment, and the lack of good faith in the purchase of the note by plaintiff and appellant; and second, reply alleging waiver of those defenses.

Briefly, the facts are: Appellant John Aj. May, on the 23d day of December, 1920, executed, made payable, and delivered to Irving W. Durfey said written instrument, in the sum of  $4,500, due September 1, 1928, with interest at the rate of 7 per cent per annum. This was thus given to Durfey in payment of a supposed

interest purchased by John Aj. May in a Texas land syndicate, represented by Durfey and one Arthur F. Willoughby, both residents of Illinois. Immediately, that note was indorsed by said Durfey and transferred to Willoughby, who, in turn, sold the document to the appellant Homer Hill, of Sioux City, February 4, 1921. However, on February 23d of that year, before the last transaction, the appellee, Orpha L. May, placed her signature, as accommodation maker, upon the subject of this controversy.

In view of the fact that there are two appeals involved, it will lend to clearness if the further incidents surrounding each appeal are related under the separate discussions thereof.

I. John Aj. May pleaded: First, failure of consideration; second, delivery of the note in trust, to be used for buying equity contracts for syndicate purposes only; third, that the payment was to be made, on the instrument sued upon, by John Aj. May only if and when Durfey sold those equities, and had more funds of the syndicate belonging to the said May than the total amount due on the note; and fourth, that, at the time of purchasing the note, appellant Hill knew and understood all the terms and conditions under which it was executed by May and received into the syndicate. To this answer, appellant Hill interposed in reply: First, a general denial; and second, a waiver: (a) based upon the circumstances that, before Hill bought the note, he demanded and received from John Aj. May a telegram, to the effect that the contemplated purchase was agreeable to him; and (b), after knowing of the proposed transfer, and in pursuance thereof, he obtained, on behalf of appellant Hill, the accommodation signature of his wife, Orpha L. May, thereon.

Upon these issues, the cause was tried between the two litigants. Evidence was offered and introduced on behalf of John Aj. May to establish the trust relationship. Moreover, there was in the record confirmation of appellant May's claim that the note was delivered for the uses alleged. Additional testimony was submitted and received, to indicate that appellant Hill, at the time he acquired the note, in violation of the trust agreement, knew the facts and circumstances surrounding its execution, as well as the purposes of the trust. Supplemental proof was presented, to show that there was no sale of the syndicate property, or accumulation of money therein belonging

to John Aj. May, or anyone else. Those particular facts, under the pleadings in the case at bar, affected the maturity of this particular obligation and Hill's right to recover thereon.

Also, before the trial court were the statements, at least of May, that he received no consideration of any kind for this instrument, and failed to acquire any property in the syndicate.

Thus, there was some evidence, under the theory of the trial, upon which a jury could base its finding to the effect that no liability existed at that time on the part of John Aj. May.

II. Nevertheless, appellant Hill urges that a directed verdict was proper because appellant May waived his right to interpose the above defenses, in that he authorized the sale of the note by means of a telegram.

The record at this juncture, in behalf of appellant May, is to the following effect: Arthur F. Willoughby testified:

"Hill told me that he would not want to buy Dr. May's [appellant John Aj. May] note unless Dr. May knew about it. I sent a telegram to Dr. May, asking him to wire me, stating that he did not care who bought the note. I can't recall the words of the wire. The wire verified the existence of the note and its sale. The wire was for the purpose of substantiating the proper existence of the note."

As to what "sale" was referred to does not appear. Up to that time, there had been but one in "existence," and that was from Durfey to Willoughby. Hence, the jury could well have found that the verification of the sale's existence had reference to the transaction between Durfey and Willoughby. Especially is this true when the witness follows his declarations with the sentence: "The wire was for the purpose of substantiating the proper existence of the note."

May, in his own behalf, testified that he did not remember the language of the telegram, the original of which was not introduced into the record. So it was entirely consistent with appellant May's theory that by sending the wire he was authorizing the use of the note for collateral purposes, within the purview of the trust, rather than an out-and-out sale to a stranger.

Parenthetically, it is to be noted that appellant Hill was the brother-in-law of appellant May. They were well acquainted, and there appears to be no reason why appellant Hill should not have communicated with appellant May directly,

rather than depending upon the stranger, Willoughby, for the "verification" demanded. Hill knew, according to the record, that appellant May had executed this note for the purposes before stated; yet, for some unexplained reason, the proposed sale to Hill was kept a secret from appellant May.

A waiver of appellant May's defense was not conclusively established by the telegram transaction, but rather, there was at least created thereby a disputed fact, to be determined by the jury.

III. Notwithstanding this, appellant Hill still contends that the directed verdict in his favor can be substantiated under the waiver doctrine, because of the action taken by the appellant May in procuring the signature of his wife, appellee, Orpha L. May, to the note after its original delivery. Especially, it is said this is true in view of the telegram which was received before the appellee, May, became an accommodation party. With this we do not agree. Willoughby declared:

"I * * * went on the next train to Manchester, and presented the note to Dr. May [John Aj. May, appellant] and Mrs. May [Orpha L. May, appellee], and got her signature to the note."

On that subject, John Aj. May was asked this question:

"Q. And what was said to you by Mr. Willoughby with reference to the purpose of obtaining your wife's signature upon the note? A. To be used as collateral."

Therefore, appellant May explained his actions in a way that amounted to a rebuttal of appellant Hill's claim of waiver. Clearly, there was sufficient evidence on the controverted fact to entitle its submission to the jury; and because of the court's failure so to do, there must be a reversal on appellant May's appeal.

IV. Appellee, Orpha L. May, pleaded as a defense in her own behalf: First, failure of consideration; and second, each and all the "defenses" employed by her husband for himself, which related to the delivery of the note in "trust;" and the identical reply, with reference to the waiver aforesaid, was made thereto by appellant Hill as that used by him to overcome the pleas of appellee's husband. Consequently, the same evidence is before us, and so there is no need of again repeating

here. But, because a verdict was directed against John Aj. May, and in this instance the cause was submitted to the jury in behalf of Orpha L. May, the assignments of error are accordingly different.

At the trial, Orpha L. May offered and introduced evidence to prove the trust relationship. Objection was made, not that such testimony sought to vary or overcome the terms of a written contract, but rather, that it was hearsay, because relating to conversations not had in the presence of appellant Hill. The court admitted the statements of the witnesses concerning the oral contract between John Aj. May and the syndicate. Because of this ruling, error is assigned by appellant Hill.

We are limited in our review to the scope of the specific objections and the argument now made thereunder by appellant Hill. Manifestly, two legal principles are presented,—one relates to the hearsay-evidence rule, and the other to the doctrine preventing the variation of a written contract by parol.

Distinction between the two legal theories here embodied is pointed out in *Hills Sav. Bank v. Hirt*, 204 Iowa 940. Due to the limited assignments and contentions aforesaid, we are precluded from further deliberating upon the "parol-evidence rule," and will thenceforth confine our study to the "hearsay rule." Section 9476 of the 1924 Code, among other things, provides:

" * * * As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting, or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional or for a special purpose only, and not for the purpose of transferring the property in the instrument. But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him, is conclusively presumed. * * * "

That section of the statute has previously been before us for consideration. *Mason v. Cater*, 192 Iowa 143; *City Nat. Bank v. Mason*, 192 Iowa 1048. Our language in *Mason v. Cater*, supra, is to the following effect:

"As between the immediate parties to a negotiable promissory note, the delivery may be shown to have been conditional,

and for a special purpose only. \* \* \* Our reports are replete with decisions that, as between original parties to a written contract, an oral agreement collateral to the writing, and serving as an inducement for the signing thereof, may be established by parol. *Ball v. James,* 176 Iowa 647; *Sutton v. Griebel,* 118 Iowa 78; *Garner v. Kratzer,* 173 Iowa 292; *Banwart v. Shullenberg,* 190 Iowa 418.''

Wherefore, in view of the pleadings involved, the theory of the trial, and the nature and scope of the errors assigned, we are constrained to say that the trial court made no mistake in permitting the assertions and declarations of the witnesses in this regard. Such proof was properly received, when connected with the further substantiation of the fact that appellant Hill knew of these conditions and circumstances relating to the execution and delivery of the note in trust, as well as the objects of that particular relationship; for, in such event, the jury was justified in finding that Hill was not a good-faith purchaser, but acquired his interest with full information and notice of the rights and equities belonging to the Mays.

V. Complaint is next made by appellant Hill because the trial court submitted to the jury the issue of "no consideration"

 passing to the appellee, Orpha L. May, for her liability on the note. Basis for this objection is founded primarily upon the ground that the appellee, Orpha L. May, became an accommodation party after the original delivery by appellant John Aj. May to the payee, Durfey, and before Willoughby transferred it to Hill. Under these circumstances, it is said that the consideration of the accommodator was the purchase of the instrument by appellant Hill. Code of 1924, Section 9489, reads:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party.''

By reference to the facts under which appellee, Orpha L. May, signed the instrument, and appellant Hill received it, plainly we can see that she did not become an accommodation

maker for the purpose of enabling Willoughby to alienate and separate the same free and clear from the trust relationship. Orpha L. May, appellee, on her examination at the trial, asserted:

"These notes [including the one in question], if I understand it right, were given on a contract, and we didn't have to pay this note until the contract was fulfilled,—that was my understanding."

Here we repeat the declarations of Willoughby:

"I immediately went on the next train to Manchester, and presented the note to Dr. May [appellant John Aj. May] and Mrs. May [appellee], and got her signature to the note."

And it is to be recalled that appellant John Aj. May was interrogated, and made answer as follows:

"Q. And what was said to you by Mr. Willoughby with reference to the purpose of obtaining your wife's signature upon this note? A. To use it as collateral."

Without substantial controversy (except that we are requested to draw different inferences from words of appellant Hill), it appears that appellee, Orpha L. May, became a party to the subject of this suit for the object suggested, and not with the idea of assisting Willoughby in separating the same from the trust and selling it to appellant Hill independently thereof. She did not know Hill was to be the purchaser, or that any other person was to acquire the paper free from its trust relations. Notation must here be made of the following additional utterances of Willoughby:

"Prior to the purchase of the May notes, the full transaction was explained to him [appellant Hill]. He was informed * * * that it was on a resale contract by which Dr. May [appellant John Aj. May] was to be repaid on this note. I conducted the negotiations with Hill. * * * Naturally, the entire transaction was discussed between May and myself, the terms and conditions, etc. Hill was thoroughly familiar with my business * * *. I told Mr. Hill that the payment of the note was to be made from the resale of the contracts, which we were at that time pooling * * *.

"Q. Give it as nearly as you can, the statement you made to Mr. Hill as to this particular feature. A. In reference to the payment of the notes? Q. The return of the notes to Dr.

May [John Aj. May, appellant]. A. The notes, or the note, was to be paid for at the time of the resale of the contract."

Mr. Hill, the appellant, was accordingly fully and fairly advised, if the jury were to believe the testimony offered by appellee, Orpha L. May, that she received no consideration for her responsibility on this document for the negotiation claimed, because it was not a transfer within, but rather without and beyond, the terms of the trust. This, of course, was her version of the situation; yet, nevertheless, she was entitled to have that submitted to the jury. To be sure, the declarations of her witnesses were to some extent contradicted, but those contrary contentions were properly submitted to the fact-finding body. It returned its verdict, under proper instructions, in favor of the appellee, and about this, under the circumstances, appellant Hill has no just reason to complain.

VI. From the above and foregoing review, it is apparent that "waiver" did not deprive the appellee of the right to make the defenses pleaded and proved by her.

A further or more elaborate discussion of said alleged relinquishment at this time will serve no useful purpose, but, on the other hand, the result of such continued discourse would amount to needless repetition.

The judgment and decree of the district court on the appeal of John Aj. May is reversed and remanded, and upon the appeal of appellant Hill, it is affirmed.—*Affirmed in part; reversed in part.*

STEVENS, C. J., and EVANS, FAVILLE, DE GRAFF, ALBERT, MORLING, and WAGNER, JJ., concur.