SARAH STODDARD, Appellee, v. N. A. KENDALL, Appellant.

Evidence: ATTORNEY AND CLIENT: CONFIDENTIAL COMMUNICATIONS. A communication made by a testator to the attorney drawing his will may, or may not, be privileged, depending upon its nature; and where there is nothing in the communication itself indicating that is was of a confidential nature, and no other fact tending

to so characterize it, the testimony of the attorney thereto is not privileged.

**Homestead:** ELECTION BY WIDOW.  A widow has the election to take either a homestead right or a distributive share of her husband's estate, which she may exercise within a reasonable time after his death; and while mere occupancy of the property for a considerable time may not alone be sufficient to conclusively establish her election to take a homestead, still it raises a presumption which should be considered with other facts bearing upon the question; so that where she instituted no administration, occupied the property for two and one half years and all the circumstances, her acts and conduct, were inconsistent with a claim of any other estate in the property she should be held to have made an election of the homestead.

**Same.**  While by the statute an heir may end the time within which the widow may make her election to take the homestead right or her distributive share, by serving a notice requiring her to make the election, still failure to serve the notice does not operate to extend the time for doing so indefinitely; and in the absence of such notice an election manifested by her unequivocal words, acts and conduct may be enforced.

*Appeal from Tama District Court.*—HON. C. B. BRADSHAW, Judge.

THURSDAY, JANUARY 14, 1909.

ACTION in equity for partition of real estate.  Decree as prayed by plaintiff, and the defendant appeals.—*Affirmed.*

*Struble & Stiger,* for appellant.

*J. R. Caldwell,* for appellee.

WEAVER, J.—On July 29, 1903, Sanford G. Kendall died intestate, seised of a certain tract of land or town lot which constituted his homestead in the city of Tama, Iowa.  Said deceased left surviving him his widow, Ruth M. Kendall, and certain lineal descendants, among whom

were a daughter, Sarah Stoddard, the plaintiff in this action, and a son, N. A. Kendall, who is one of the defendants and appellant herein. Neither the widow nor any other person entitled so to do applied for or took any steps to secure administration upon the estate of the deceased, and the same has never in fact been administered upon. Indeed, it is not shown that said deceased left any estate or property except said homestead. From the death of said intestate the widow continued to occupy, use and control the homestead until April 28, 1906, at which date she died testate. Her will, which bears the date October 31, 1903, and has been duly probated, makes specific bequests to each of her children and grandchildren except a son N. A. Kendall, for whom it provides as follows: "Sixth. Subject to the foregoing charges, bequests and legacies I give and bequeath to my beloved son Newell A. Kendall the rest and residue of my estate of which I may die seised whether real, personal or mixed, including the east half of the southeast quarter of section seventeen (17) in township eighty-two (82) north and range fifteen (15) west of the 5th P. M. in Tama County, Iowa." After the death of said Ruth M. Kendall, the daughter, Sarah Stoddard, began this action for the partition of the homestead between the heirs of her father, Sanford G. Kendall, alleging that he died intestate, seised of said homestead property, and that his widow elected to take and enjoy a homestead right therein in lieu of a distributive share, and that the same, therefore, descended to his heirs or their representatives in equal shares.

The defendant N. A. Kendall denies that the widow ever elected to take a homestead right in the property in lieu of a distributive share, and alleges that, upon the death of her husband, she became vested with title to an undivided one third of said property, and that, upon her death, such interest passed to himself under the residuary clause of his mother's will above quoted. On trial to the

court, it was shown without substantial controversy that
from the death of her husband in July, 1903, to her own
death in April, 1906, the widow continued in full occu-
pancy and control of the property as a homestead; neither
paying nor accounting to anyone for rents or profits. At
the time of executing her will, she spoke of the home prop-
erty to the lawyer, J. W. Willett, who prepared the instru-
ment, saying: "I intend to occupy that as a homestead as
long as I live. I do not believe I have a child that will
keep me out." It should be noted, also, that the will
executed by her, while describing specifically other prop-
erty of which she unquestionably died seised or possessed,
makes no mention of the property in controversy, and, if
it passed to the defendant at all, it must be by virtue of
the general language used in the residuary clause. The
trial court found for the plaintiff that the widow had
elected to take a homestead right in the property, and
that the entire fee therein descended to the heirs of San-
ford G. Kendall.

It is first argued that the court erred in admitting the
testimony of Mr. Willett. The objection, we think, is
untenable. The mere fact that the person offered as a
witness is an attorney at law does not ren-

1. EVIDENCE:
attorney and
client: confi-
dential com-
munications.

der it improper for him to relate statements
or communications made to him by another,
nor is the fact that the person whose state-
ments are sought to be proven was a client of said lawyer
at the time the communication was made sufficient in it-
self to exclude the testimony of the latter concerning it.
That which the statute forbids is a disclosure of "confi-
dential communications" properly intrusted to him in his
professional capacity and necessary and proper to en-
able him to discharge the functions of his office, according
to the usual practice and discipline. Code, section 4608.
The preparation of wills, though appropriately and com-
monly done by lawyers, is by no means exclusively confined

to members of the profession. It may be done, and frequently is done, by persons in every rank and vocation of life. It is in many respects essentially the work of a scrivener. If a lawyer be employed in such service, the testator may ask at his hands legal advice and intrust him with confidential information to which without doubt the protection of the statute would apply, but the mere fact that the lawyer was engaged in preparing a will at or about the time a given statement was made—and that is all we have in the case before us—does not necessarily give it a confidential character. *Mueller v. Batcheler,* 131 Iowa, 650, and cases there cited. See, also, *Blackburn v. Crawford,* 70 U. S. 175 (18 L. Ed. 186). In short, a communication made at such a time may or may not be privileged, according to its nature; and, if upon its face it bears no indication of being a communication of a confidential nature, and there be no other fact or circumstance tending to so characterize it, the testimony of the attorney thereto ought not to be excluded. The burden of showing the confidential relation is upon the party objecting.

Proceeding, therefore, to the matter in issue, counsel for appellant contend that the whole case is summed up in the inquiry: "Does the occupancy of the homestead by the widow for two and one-half years after her husband's death without administration upon his estate, and without written notice by the heirs requiring her to elect between homestead right and distributive share, and without written election by her, constitute an election on her part to take homestead rights?" If we were to agree that the question thus propounded is all we have to decide upon the record before us, we should very promptly answer it in the negative, and reverse the decree appealed from. But we do not so apprehend the situation. That the widow has an election between the two rights is settled by statute. Code, section 2985. We

2. HOMESTEAD: election by widow.

have held that she is not required to make her election ·at
once upon her husband's death, but may exercise her choice
within a reasonable time.   *Cunningham v. Gamble,* 57
Iowa, 46.   And we can not now say that under no cir-
cumstances whatever could she avail herself of that privi-
lege after two and one-half years from the death of her
spouse.   There may be cases where a longer delay would
not be unreasonable, and we are satisfied that, under some
circumstances, delay of less than the period named would
be clearly so, but we have here something more than the
bare fact of delay of the widow during the remainder of
her life indicating an election.   Though not conclusive of
an election, such delay is certainly a circumstance of some
weight, and it has frequently been held to give rise to a
presumption—rebuttable, of course—that the widow has
elected to take. homestead rights.   *Butterfield v. Wicks,*
44 Iowa, 310; *Stevens v. Stevens,* 50 Iowa, 491; *McDon-
ald v. McDonald,* 76 Iowa, 137; *Schlarb v. Holdenbaum,*
80 Iowa, 394.   It is true that no administration was had
in this case upon the husband's estate; but the widow had
by statute the first right to procure it if the deceased left
any estate to be administered upon.   As we have said, there
is nothing to show the existence of such an estate, and, if
there were, we think, the widow could not by her neglect or
failure to seek such administration prolong the time in which
she could act in determining her rights in and to the home-
stead property.   There is nothing, therefore, to indicate
any occasion for her to postpone her election for the pur-
pose of ascertaining which course would be to her best
interest under the principle suggested in *Thomas v. Thom-
as,* 73 Iowa, 661, and *Lund's* case, 107 Iowa, 266.   We
can not presume the existence of any such conditions.
She did, in fact, continue to occupy and use the property
as a homestead until her death.   Her conduct was in all
respects consistent with the purpose to so hold it for life.
No act, word or statement by her is offered tending to

any other conclusion. No plausible reason is shown for rejecting the inference or presumption which attaches to her long-continued possession and use. It is of much significance that, in framing her testamentary provision for the appellant, she describes particularly the land devised to him, but nowhere mentions or devises any interest in the town property, unless we are to say it is embraced within the general terms of the residuary clause. It is difficult to avoid the conclusion that, if she considered herself the owner of this property, she would have made some specific mention of it. Her statement to Willett is in perfect harmony with all of the inferences to be drawn from her conduct and attitude with respect to said property, and we are of the opinion that the record as a whole sustains the conclusion of the trial court.

Counsel press upon our attention the fact that no notice was served upon the widow requiring her to make an election, and that there is no showing that she ever did make or file of record a written election to take homestead rights as provided in Code, section 337*l.* It is true the statute gives an heir the right to serve such a notice, and, if the widow fails to signify her election within six months, she is conclusively held to have waived her homestead right. But the statute does not provide, and it would be an unreasonable construction of its terms to say that the right of election shall contiuue indefinitely until notice is served or that a binding election may not be made without the execution and filing of a writing to that effect. The question as to what constitutes an election between homestead right and distributive share (Code, section 3377) is not of like character with the question of election to take under a will. Code, section 3376. *Robson v. Lambertson,* 115 Iowa, 368. By the latter, it is enacted that the widow's share shall not be affected by the husband's will unless she consents thereto in the particular manner there described and pointed

3. SAME.

out, or fails to do so within six months after proper notice to act. By the former a method is provided by which an heir may put an end to the time in which the widow can elect between her homestead and the distributive share, but it neither expressly nor impliedly enacts that, where no such notice is served, the widow may not bind or estop herself by an election which has not been reduced to writing and filed in court.

While a written election is perhaps the most definite and certain method of exercising the right, and where notice has been served upon the widow by the heir it is the statutory method, we see no reason, in the absence of such notice, for not adhering to our former decisions upon this question, and hold that an election manifested by unequivocal acts, words and conduct may be enforced.

The decree of the district court is *affirmed.*