BRUCE PEAK, Appellee, v. WALTER P. RHYNO, Appellant.

**NEW TRIAL:** Grounds—Passion and Prejudice—Excessive Verdict. An apparently excessive verdict does not necessarily show that it is the result of passion and prejudice. (See Book of Anno., Vol. 1, Sec. 11550, Anno. 337 *et seq.*)

**TRIAL: Verdict—Nonquotient Verdict.** The executed agreement of the
2   jurors to each vote the amount of damages to be allowed, and to
    divide the sum total by twelve, with no agreement to be bound by
    the result, followed by further fair and open discussion and the
    return of a verdict accordingly, does not constitute a ''quotient''
    verdict.  (See Book of Anno., Vol. 1, Sec. 11508, Anno. 10 *et seq.*)

**HUSBAND AND WIFE:   Enticing and Alienating—Excessive Verdict.**
3   Verdict for $16,750, in an action for criminal conversation and
    alienating the affections of a wife, held excessive, and reduced to
    $8,000.  (See Book of Anno., Vol. 1; Sec. 11550, Anno. 323 *et seq.*)

Headnote 1:  29 Cyc. p. 841.  Headnote 2:  38 Cyc. p. 1845.  Headnote
3:  30 C. J. p. 1153.

*Appeal from Madison District Court.*—W. G. VANDER PLOEG,
Judge.

OCTOBER 27, 1925.

THE action is for criminal conversation and the alienation
of the affections of plaintiff's wife.  From the judgment upon
a verdict of $16,750 for plaintiff, the defendant appeals.—*Modi-
fied and affirmed.*

*Phil R. Wilkinson* and *John A. and W. T. Guiher,* for ap-
pellant.

*Dalton & Knop* and *Leo C. Percival,* for appellee.

VERMILION, J.—The assigned errors are: (1) That the ver-
dict is not supported by the evidence, is contrary to the evidence,
and is the result of passion and prejudice; (2) that it is a quo-
tient verdict; and (3) that it is excessive.

I.   The appellant is a widower.  After the death of his
wife, the appellee's wife, before her marriage, had been employed
by appellant as housekeeper.  Appellant had two daughters at
home at that time.  After the marriage of the daughters, and
after appellee was married, the latter and his wife lived in the
house, and appellant boarded with them.   This arrangement
began in the fall of 1920, and continued for over two years; and
it is during that time that the acts complained of by appellee
are alleged to have occurred.

Without setting out the testimony, it is sufficient to say that appellee's wife testified in considerable detail to her relations with the appellant; that he began his attentions to her right after Christmas, 1920, avowing his affection for her, proposing that she should leave her husband, and that he would get a divorce for her and marry her, and saying that he had money, and would give her half of it, caressing her, and making improper proposals to her. She testified that he first had sexual intercourse with her in February, and that their illicit relations continued during a good part of the time she and her husband remained in the appellant's house; that she quit getting her husband's breakfast, at appellant's suggestion; and that, after appellee would leave the house to go to his work, early in the morning, appellant would see that the door was locked, and then come to her room; that she gave birth to a child in November, 1921, and appellant visited her at the hospital, and after her return to the house, their relations continued until the appellant left on a visit in January, 1923; that, after the birth of the child, she and appellant arranged that she should go west, and sue for a divorce, and he would come and marry her; and that she was packing her things to go, but changed her mind.

The appellee corroborated his wife somewhat in minor details, but testified that he did not suspect any improper relation between her and appellant until he learned of it after appellant left, in 1923. He testified that he noticed that his wife quit getting up to get his breakfast, and that the doors were always locked. He also testified to a conversation with appellant after the latter's return; that he told appellant what he had learned, and appellant said there was nothing to it, and said: "If it was that, that I could get him for nothing but rape."

The appellant, as a witness, denied any improper relations with appellee's wife, denied that he told her he loved her, or said he would marry her, or that he ever had sexual intercourse with her. He also denied that he said to appellee that he had been guilty of rape, and in this is corroborated by another witness, who claimed to have been present at the conversation.

There were but four witnesses examined on the trial, and the foregoing is the substance of their testimony bearing directly on the issue of criminal conversation.

The appellee was only required to establish his contention by a preponderance of the evidence. *Welch v. Jugenheimer*, 56 Iowa 11. The issue was clearly for the determination of the jury, depending for its decision upon the credit

1. NEW TRIAL: grounds: passion and prejudice: excessive verdict.

given the witnesses. A verdict for plaintiff finds support in the evidence. The only thing suggested as indicating passion or prejudice on the part of the jury is the amount of the verdict. A verdict for an excessive amount does not necessarily show that a verdict in plaintiff's favor was the result of passion and prejudice. *Baxter v. City of Cedar Rapids*, 103 Iowa 599; *Connors v. Chingren*, 111 Iowa 437; *Doran v. Cedar Rapids & M. C. R. Co.*, 117 Iowa 442; *Brause v. Brause*, 190 Iowa 329. And this is true even where the lower court, considering the verdict excessive, required the successful party to accept a judgment for a smaller amount, or submit to a new trial. Here, the trial court refused to interfere with the verdict. We think it is not shown that the verdict for plaintiff was the result of passion and prejudice on the part of the jury, by the mere fact that the amount awarded may appear to us, upon the record, to be excessive.

II. Upon the motion for a new trial, the testimony of four jurors was taken. Their testimony was to the effect that, after the jurors had agreed that the defendant was guilty, each juror voted for the amount of damages he thought

2. TRIAL: verdict: nonquotient verdict.

should be awarded. These amounts were added, and the sum divided by twelve. Some of the jurors were not satisfied with the amount so obtained as the damages to be allowed, and the operation was repeated, with a different result. Some of the jurors were still dissatisfied; but, after the instructions were again read, and the matter discussed, the amount so arrived at was agreed upon as the amount of the verdict. The testimony does not establish any agreement of the jurors in advance to be bound by the result, and it is clear that they did not consider themselves so bound, but merely adopted that method of arriving at an amount which, after further fair and open discussion, they agreed should be the amount of damages awarded. The verdict so agreed upon was not a quotient verdict. *Kime v. Owens*, 191 Iowa 323, and cases cited.

III. The verdict was for $16,750. The injury is one which

the law, in accordance with the opinions of all ages and all peoples, recognizes as a very grievous one. We have said that

**3. HUSBAND AND WIFE: enticing and alienating: excessive verdict.**

such damages as may be awarded can but inadequately compensate for such a wrong, and that for this reason, courts rarely, if ever, interfere with the measure meted out by the jury. *Ruby v. Lawson*, 182 Iowa 1156.

The instructions to the jury are not before us. The elements of damage involved, as shown by the pleadings, were the injury to the reputation, fame, and good name of the plaintiff, his humiliation and disgrace, and the loss of the affection, comfort, society, and assistance of his wife, resulting from her malicious seduction by the appellant. The evidence does not show, either by direct proof or legitimate inference, any injury to plaintiff's feelings, reputation, or good name more than would naturally be incident to such a wrong. It appears that his separation from his wife on account of her misconduct was but of a few weeks' duration. Their reconciliation at the end of that time seems to have been complete. There has been no such total or permanent destruction of his home life or deprivation of the society or affection of his wife as usually follows the infliction of such a wrong. We would not imply that appellee's reconciliation with his wife is to be attributed to any lack of moral sensibility on his part, or indeed to any motive other than a spirit of charity and forgiveness for an erring woman, or that it could operate to relieve appellant of the just consequences of his wrongful act. Nor would we in the slightest degree extenuate or excuse the conduct of appellant or the wrong of which he has been found guilty. But with all of these considerations in mind, upon a careful review of the record before us, we are constrained to say that in our opinion the judgment should be reduced to $8,000, and it is so ordered.—*Modified and affirmed.*

FAVILLE, C. J., and STEVENS and ALBERT, JJ., concur.

DE GRAFF, J.—The damages awarded by the verdict are so excessive that I would reverse.