WILLIE HEERDE, appellee, v. LESLIE KINKADE, appellant.

No. 49277.

(Reported in 85 N.W.2d 908)

NOVEMBER 12, 1957.

W. B. Bedell, of Spirit Lake, for appellant.

K. B. Welty, of Spirit Lake, and Walter E. Johnson, of Milford, for appellee.

SMITH, J.—The assault and battery involved here occurred November 19, 1955, at the farm of Everett Kruse. While there are some disagreements over details, the broad outlines are fairly ascertainable without much question. Plaintiff, a 43-year-old farmer, drove over to his neighbor Kruse's with his truck to help haul Kruse's oats to town. Kruse and Joe McDaniels were there. Kruse is defendant's son-in-law. The so-called "Kruse farm" was rented from defendant's wife.

While the other two men were up in an overhead bin plaintiff went to the back end of his own truck and saw defendant,

Kinkade, who had just arrived and was standing on the ground. The to-be-expected differences as to details ensue from about this point.

Defendant, a 55-year-old trucker of Milford, Iowa, says he overheard plaintiff say to the men above, or to Kruse, "They should turn a boar in with her" and "You should get some of that from your landlord." They substantially agree as to what plaintiff said when he saw defendant: "Well, talk about the Devil and he is sure to appear." Then according to defendant:

"I said, 'What's the idea talking about my wife like that?' He said, 'If the shoe fits, all right.' I said, 'You're a lying son of a bitch, I should show you' and climbed up in the truck and hit him * * * and either knocked him down or he fell down. He got up, started hollering that I owed him for a separator, couldn't pay for two years. I said I could and took $20 out and handed it to him and he said, 'No, it will cost you more than that.' * * * He got out * * * and called me a son of a bitch and I * * * hit him again * * * he went toward the house and picked up a rock and said 'You * * * I'll smash your head in.' "

Plaintiff testifies that when he first saw defendant "I said 'Well, talk about the Devil and he is sure to appear.' I had never had any words with him before and we lived neighbors. I helped him in combining. The only thing that had been said by any of us about Mr. Kinkade prior to this was Everett Kruse says 'I'll be damned if I'm gonna pay them so much for hauling my grain.' Mr. Kinkade said, 'Yes, what do you mean talking about me like that?' I says 'Why, Les, if we said anything about you it was the truth wasn't it?'

"He then came up to the truck * * * and I says to him, 'Why, Les, you ought to be ashamed * * * the way you hang around here. You want to be a big shot, and rich and everything. * * * Furthermore, owing a guy for two years for a separator you never paid for.' * * * Neither of the boys or myself said anything about Mr. Kinkade's wife that morning."

Plaintiff's further testimony may be condensed: "* * * he knocked me down. He struck me with his fist on the left temple in front of the ear. I then hollered for Everett right away to get the Sheriff, that Kinkade was here." (This was apparently in

the truck.) "I was kinda dazed when he hit me the first time. I got up and he hit me on the side of the box, pounding me on the side of the box on my head * * * against the side of the box. * * * Les said 'You had this coming a long time.' * * *

"At this time we were both on the ground behind the truck. * * * Mr. Kinkade kept on following me as I was backing away from him all the time * * *. He hit me against a rock on the ground * * * he was right on top of me * * *.

"Joe McDaniels * * * says 'That is enough, Les, when a man is down I don't like to see you kicking and hitting him.' Mr. McDaniels pulled Les off. That was the end of the beating."

Kruse and McDaniels testified for plaintiff and corroborated his testimony in most important particulars. Don Jungers, who had come that morning with defendant, testified as witness for him, but his testimony merely minimized the affair, though he confirmed plaintiff in some particulars. He said defendant hit plaintiff, but added: "I think he just fell down. I don't think he was hurt any."

We have fairly covered the testimony of those present. It should be noted no one, not even defendant, says plaintiff struck a blow. He retreated so far as possible. But he did orally incite the attacks—at least his comments cast no "oil on the troubled waters" of defendant's inexplicable—or unexplained—original anger. Certainly his introductory remark was, or could have been accepted as, humor. It is not usually considered offensive.

Defendant says he is "approximately 6 feet tall, weigh about 220 pounds." Plaintiff weighed 146 pounds but was only 43. Plaintiff's eleven years advantage in years was seemingly overcome by defendant's advantage in size and fistic skill. We are not shown the background of either man.

Plaintiff prayed for judgment for actual damages $10,000, medical expense $4 and $5000 exemplary damages. On defendant's motion at the close of plaintiff's main case the trial court dismissed plaintiff's claim for permanent injury, and at the close of all the evidence withdrew the claim for loss of time on the argument there was no evidence from which a jury could find any value.

The jury returned a verdict for plaintiff, $2504 actual (the $4 for doctor's fees) and $2500 exemplary damages. Defendant

moved for a new trial naming various grounds. The only ones reviewable here are: "That the verdict rendered is excessive in itself and under the entire record shows passion and prejudice were influencing factors in its determination"; that the verdict is not sustained by sufficient or competent evidence; that the court erred in submitting the matter of exemplary damages when no claim for actual damage was submitted except pain and suffering; and the verdict must have been influenced by matters outside the record. The motion was overruled.

I. The only error assigned is that the verdict both as to damages for pain and suffering and exemplary damages shows passion and prejudice. Eight Iowa cases are cited (but not argued) followed by a page of argument which dwells only on the fact that claims for permanent injury and cost of service were withdrawn leaving only claims for pain and suffering, medical expense and exemplary damages; and where "medical expense is only $4 and plaintiff is only confined for a few days at home", the allowance for pain and suffering is excessive and shows passion and prejudice.

II. Plaintiff-appellee urges the "depreciated purchasing power of the dollar must be considered." We must of course consider that. Elings v. Ted McGrevey, Inc., 243 Iowa 815, 822, 53 N.W.2d 882; Glatstein v. Grund, 243 Iowa 541, 558, 51 N.W.2d 162, 36 A. L. R.2d 531. But that is only one element in the problem. We have often recognized that an excessive verdict is not necessarily the result of passion and prejudice, and that justice may sometimes be effectuated by a remittitur in the absence of passion and prejudice. Curnutt v. Wolf, 244 Iowa 683, 689, 57 N.W.2d 915, citing cases.

Plaintiff argues that the facts "prove a deliberate, willful, vicious and cruel attack upon the plaintiff, followed by unlawful striking, beating and unmerciful hammering" and that "the preponderance of the evidence disproves the claimed provocation."

We have not set out the details of plaintiff's injuries as shown in the record. He went to Dr. John J. Buchanan at Milford. "I observed my right arm was stiff * * * had awful pain in my arm * * * was dazed and dizzy * * * had blood on my face and head * * * cut on the top of the side of the left temple and

one on the left cheek. He did not X-ray my arm. He bandaged my head and face * * * put my arm in a sling."

Plaintiff testifies to continuing pain up to time of trial (October 1956) but was back to the doctor only three times. He complains that his elbow is still stiff and snaps at times.

Mrs. Heerde corroborates him at considerable length. Doctor Buchanan is somewhat more restrained: "He was very perturbed, excitable, pale, shaken. He had a contusion and abrasion on the left temple. He held his left arm slightly flexed and against his body. Elbow was swollen and tender to touch, and there was * * * what you would call a cracking sound on flexion * * * in common terms he had a sprained left elbow."

He says: "There was no tenderness sufficiently great over the bony formation to warrant X ray. I was positive in my own mind it was entirely soft tissue damage. Tissue includes muscle, ligaments, nerves, arteries, veins, etc. * * *

"Recently I was requested to take X ray of both arms * * * and that I did. I examined the arm with reference to limitations and flexibilities. I would say 15 or 20% flexion disability and maybe 8 or 10% extension disability."

III. Precedents, in cases of this sort, are not very helpful except as reflecting tendencies as influenced by conditions affecting appraisal of damages. We are agreed this was an aggravated assault and battery and so considered by the jury. The size of the verdict for exemplary (punitive) damages probably reflects that opinion.

But we think the verdict for pain and suffering here reveals the jury took into account matters not proper to consider in a case of actual damages for injuries causing extreme pain for awhile but with no showing of permanent effects. While not amounting to passion and prejudice the jury seems, in appraising the actual, to have been unable to lay aside the considerations proper in determining the exemplary, damage.

■ " 'The discretion of the jury in awarding damages is always subject to the supervisory power of the court, which will not hesitate to set aside a verdict where the damages allowed are out of all proportion to the pecuniary injuries.' " Scott v. Hinman, 216 Iowa 1126, 1133, 249 N.W. 249.

■ We said in In re Estate of Hollis, 235 Iowa 753, 759, 16 N.W.2d 599, 602: "The district court has a wide discretion in passing upon a motion for a new trial. It is with reluctance, and on comparatively rare occasions, that this court interferes with that discretion. It requires a clear case and upon the affirmative showing that discretion was abused to justify such interference. And the reluctance to interfere is greater when a new trial is granted than when the relief is denied", citing cases.

■ Absolute valuation of such injuries is of course not possible and especially where there is also occasion for punitive damages. We think the actual damages allowed by the jury verdict here are excessive (to the point of being shocking as such) and should be reduced. We cannot so order but we can and do give plaintiff a choice between consenting to a reduction or submitting to a new trial.

The case is accordingly reversed unless within thirty days from filing this opinion plaintiff consents to a reduction of the judgment for actual damages to $1504, but leaving in force judgment on the verdict for exemplary damages $2500. If such consent be filed within thirty days from the filing of this opinion the decision will be affirmed; otherwise reversed.—Affirmed on condition.

All JUSTICES concur.