RUBY B. FRANCIS, appellee, v. JOSEPH W. BARNES, appellant.

FERN E. FRANCIS, appellee, v. JOSEPH W. BARNES, appellant.

No. 51455.

(Reported in 130 N.W.2d 683)

OCTOBER 20, 1964.

Joseph L. Phelan, of Fort Madison, for appellant.

Harlan W. Bainter and Thomas F. Bell, both of Mount Pleasant, for appellees.

THORNTON, J.—This is an intersection collision case. Plain-

tiffs are husband and wife. They started separate actions which were consolidated for trial and are presented together here.

The collision occurred June 23, 1961, about 2:30 p.m. at the intersection of United States Highway No. 218 and Iowa Highway No. 16 in Lee County. Highway No. 218 runs north and south, Highway No. 16 runs east and west. There is a stop sign on Highway No. 16 stopping westbound traffic before it enters Highway No. 218, a through highway. Plaintiff husband was driving his 1951 Chevrolet pickup truck north on Highway No. 218, plaintiff wife was seated on his right. Defendant was driving his automobile in a westerly direction on Highway No. 16 to the east of Highway No. 218.

The cases were tried to a jury resulting in a verdict for plaintiff husband for $2500 and a verdict for plaintiff wife for $22,500.

Defendant appeals urging plaintiff husband did not prove his freedom from contributory negligence, and the verdicts are excessive.

I. Defendant urges plaintiff husband has failed to prove his freedom from contributory negligence in that he did not diminish his speed and the collision occurred on the wrong side of the highway.

There was ample evidence the collision occurred on the west or "wrong" side of Highway No. 218. All witnesses so testified except defendant who stated it was on the east side. Plaintiff husband testified:

"I remember crossing the bridge south of the intersection and I was traveling about 35 miles an hour at that time. When I first saw the automobile I was about 110 feet from the intersection. I was on the east side of the highway and driving around 25 miles per hour. The Barnes car was coming out of the intersection on the highway and was coming southwest and the Barnes car was going between 25 and 30 miles per hour. * * * The Barnes car was moving when I first saw it. I sounded my horn, I seen him coming and I started pulling to the left trying to dodge him. * * * At the time of the impact my truck was on the west side of the highway. It was kind of headed a little bit to the northwest trying to dodge him. The Barnes car was headed right at me

going southwest. The point of impact on my truck was on the right-hand side toward the front. The point of impact of the Barnes car was on the front of his car. I didn't see the Barnes car stop at anytime previous to this accident. * * * Just previous to the accident I touched my brakes on lightly. I didn't put them on tight."

Plaintiff wife testified, "My husband was driving about 45 but when he started to come down that little slope before he went through the bridge it was about 25 to 30. * * * Defendant's car was not quite to the stop sign when I saw it. * * * It was kind of hard to tell how fast the defendant's car was going but I thought it was going about 25 to 30 miles an hour. Defendant did not stop at the stop sign, he slowed up and then he came right straight on out. * * * My husband honked his horn and he stepped on the brakes a little. And I said 'Well he's going to run into us.' My husband didn't change his direction of travel because just after I said that I was throwed against the windshield. He hit us right away."

Defendant testified, "I came to the stop sign on 218, and I stopped, and some traffic went by, and then I started up again, and then I seen this truck coming, and I stopped again. I might have been 18 inches or so over the line headed west, over the east edge of the pavement, * * *. Mr. Francis was going pretty fast —about 50. I wouldn't say how fast. * * * When I saw that there was going to be a collision, I just sat there with my foot on the brake, I just froze. I couldn't move either way. I think if Mr. Francis would have turned to his left, because there was no traffic coming south, and if he would have turned to his left, he would have avoided the accident."

Defendant's grandson testified, "When we came to the intersection and stopped at the stop sign and then proceeded into the intersection and the collision occurred. * * * Mr. Francis' truck was in the wrong lane of traffic when he hit us."

 The foregoing is substantial evidence the plaintiff was in the exercise of due care. The duty cast on plaintiff driver even though he is on a through highway and may assume others will obey the law is to have his truck under control and reduce the **speed to** a reasonable and proper rate when approaching and

traversing an intersection. Section 321.288, Code of Iowa, 1962. And to maintain a proper lookout. Perry v. Eblen, 250 Iowa 1338, 98 N.W.2d 832. If he is traveling at a reasonable and proper rate of speed he need not reduce it still more. Miller v. Stender, 251 Iowa 123, 131, 98 N.W.2d 338; and Rogers v. Jefferson, 224 Iowa 324, 330, 275 N.W. 874. It is a jury question.

The duty of a traveler on a through highway is stated in Paulsen v. Haker, 250 Iowa 532, 537, 95 N.W.2d 47, 50, as follows:

"The true rule is that the statutory right of way is not a guarantee of safety, but that the driver on the protected road must use reasonable care under the existing circumstances for his own safety and that of others. Likewise, in connection with the duty to keep a proper lookout, we think it is his duty to make reasonable observation of all surrounding circumstances, including intersections and other traffic which may be in fair view on intersecting roads, and to use such care as an ordinarily prudent man would do in the light of everything disclosed by such observations."

See also Brown v. Guiter, 256 Iowa 671, 128 N.W.2d 896; and Beezley v. Kleinholtz, 251 Iowa 133, 100 N.W.2d 105.

Section 321.304, Code of Iowa, 1962, provides, "No vehicle shall, in overtaking and passing another vehicle or at any other time, be driven to the left side of the roadway under the following conditions: * * * 2. When * * * approaching within one hundred feet of or traversing any intersection * * *."

We do not find defendant specifically urged the above statute in the trial court. He does not point it out here. No other statute requires plaintiff to drive on the right-hand side of the roadway outside of cities and towns. See sections 321.297 and 321.298, Code of Iowa, 1962; and State v. Lura, 256 Iowa 611, 128 N.W.2d 276. In any event the facts are such that a legal excuse for the failure to observe the statute is shown. The third legal excuse stated in Kisling v. Thierman, 214 Iowa 911, 916, 243 N.W. 552, 554, is, "3. Where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute."

In this case the jury could properly find the act of de-

fendant in pulling across the east or plaintiff's right side of Highway No. 218 in front of plaintiff furnished a legal excuse not of plaintiff's making to justify plaintiff's pulling to the left. In effect defendant so testified. Paulsen v. Mitchell, 252 Iowa 65, 73, 105 N.W.2d 603, 608; and Harris v. Clark, 251 Iowa 807, 810, 103 N.W.2d 215, 217.

This is not the exceptional case in which the contributory negligence of plaintiff is so palpable that reasonable minds may fairly reach no other conclusion.

Ordinarily contributory negligence is a jury question. No citation of authority is necessary. See rule 344(f)10, Rules of Civil Procedure.

Here the jury could properly find either plaintiff did slow down as he approached the intersection or he was proceeding at a reasonable rate and need not slow down, and that plaintiff pulled to the left in an attempt to avoid defendant. The record would sustain a contrary finding, it is clearly a jury question.

II. Defendant urges the verdicts to both husband and wife were excessive because not supported by the evidence. He cites Miller v. Town of Ankeny, 253 Iowa 1055, 114 N.W.2d 910; Ferris v. Riley, 251 Iowa 400, 101 N.W.2d 176; Heerde v. Kinkade, 249 Iowa 85, 85 N.W.2d 908; and Jurgens v. Davenport, Rock Island and Northwestern Railway Co., 249 Iowa 711, 88 N.W.2d 797, for the proposition a verdict may be excessive because it is not supported by the evidence in the absence of passion and prejudice and that justice may be effectuated by a remittitur. To these might be added Engman v. City of Des Moines, 255 Iowa 1039, 125 N.W.2d 235.

In the Engman, Ferris and Jurgens cases there is one factor not present in the wife's case here. In each of those cases the plaintiff had either not been off work as in Jurgens or had returned to work.

From the evidence the jury could properly find plaintiff wife is presently suffering from an unstable lumbosacral joint with possible disk involvement and with nerve root impingement causing pain to radiate into her right leg. In addition to the injury to her back plaintiff suffered abrasions and contusions of the right arm and both knees and contusions of the right fore-

head in the collision. She had no prior back trouble except soreness of the shoulder muscles. Prior to the accident she helped her husband with all the farm work both in the field and doing chores as well as the housework, garden and yard work. Since the accident she has been unable to do any of this work. She was hospitalized from the date of the accident for ten days. During that time a back brace was prescribed and she has worn that brace ever since except for three or four weeks. She was wearing it at the time of trial. She was again hospitalized in September of 1962 for 23 days, in November 1962 for 14 days at which time she was placed in traction as a part of her treatment, in December 1962 plaintiff was again hospitalized for ten days. At the time of trial, October 1, 1963, plaintiff was still suffering from the same back condition, she has been in constant pain all of the time and currently under the care of her physician.

From the medical evidence the jury could properly find plaintiff may have to undergo a fusion operation of the injured area of the spine to stabilize her back; that the present condition is permanent; plaintiff will continue to wear the brace and have further treatment; that she will have at least 10 percent loss of functional use of her back; that she will not again be able to do the heavy farm work she had been doing before the injury without aggravating the condition of her back. Also plaintiff's doctor testified there is now present in plaintiff's back indication of an early development of traumatic or degenerative arthritis. Plaintiff was 59 years of age at the time of her injury. Her medical and hospital bills to the time of trial were $2011.95, with a minimum of $500 for future medical services. For past and future pain and suffering plaintiff asked $8000, for permanent disability plaintiff asked $50,000. For all of these items the jury returned a verdict of $22,500. Under the record it seems likely the jury allowed plaintiff her past and future medical expenses thus leaving a recovery of $20,000 for pain and suffering and permanent disability. All the jury had to consider was the testimony of plaintiff's doctors, defendant did not call one.

We have repeatedly stated pain and suffering and permanent injury are peculiarly for the jury. And we should substitute our judgment for that of the jury with extreme caution.

Mazur v. Grantham, 255 Iowa 1292, 125 N.W.2d 807; and Fredrickson v. Heline, 252 Iowa 92, 106 N.W.2d 74. The verdict is within the fair range of the testimony. The results of plaintiff's injury here.are quite comparable to those suffered by plaintiff in Fredrickson v. Heline, supra, where we sustained a similar verdict. The verdict for plaintiff wife is sustained by the evidence and we will not disturb it.

III. The verdict in favor of plaintiff husband is $2500. The evidence shows his car was damaged to the point where repair would exceed its value. The jury could properly find damages of $500 for the loss of the car. This leaves $2000 awarded for loss of consortium. This is also peculiarly a question for the jury. The jury is better able to determine the loss to a husband who has a sick or disabled wife than we are. See Mazur v. Grantham, 255 Iowa 1292, 1302, 125 N.W.2d 807, 813. The verdict here is not excessive.

IV. In this record the entire testimony of four witnesses is set out in question-and-answer form. This has increased the size of the record by at least 75 pages. It serves no purpose. When there is no issue raised as to a medical expert's qualifications, certainly no benefit accrues from setting out such in question-and-answer form. Nor is it necessary to set out such expert's name and address.

The defendant-appellant states this came about because plaintiffs-appellees insisted upon so presenting this evidence. Plaintiffs explain this by saying appellant did not set out a concise statement of the points on which he would rely on the appeal and they wished the record to be complete to answer any matters urged by appellant. The parties stipulated to the record and the trial court approved it.

Attention is directed to rule 340(d), Rules of Civil Procedure:

"If a party to the appeal shows the trial court a good reason for setting out part of the testimony in question and answer form, such part may appear by questions and answers. If this is not done, testimony of witnesses shall be abstracted in condensed or narrative form."

1184

This rule was not followed, it should have been. At the insistence of plaintiffs without following the rule, at least 75 additional pages have been added to the record. No good reason appears. To correct a typewritten abstract, if it needs correcting, it is not necessary to do so in question-and-answer form. It may be corrected in narrative form.

Therefore $75 of the costs in this court are taxed to plaintiffs, the balance to defendant.—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.