JAMES ALLEN, appellee, v. WILLIAM LINDEMAN, appellant.

No. 52317.

Frank Margolin, of Sioux City, Harold Brown, of Sac City, and Bernard A. Brown and Fred S. Nordenson, both of Sioux City, for appellant.

Thomas L. McCullough, of Sac City, and Russell Wunschel, of Carroll, for appellee.

BECKER, J.—Plaintiff sues defendant for alienation of affections. His petition demands both compensatory and exemplary damages. Jury trial resulted in a $20,000 verdict for compensatory damages and a verdict for defendant on the issue of exemplary damages. Defendant appeals.

I. Defendant's first assignment of error involves the failure to direct a verdict in his favor on proper motion. He contends there is no competent evidence to establish plaintiff's cause of action. We disagree.

For the purpose of this assignment we view the evidence in the light most favorable to plaintiff. Rule 344(f), Rules of Civil Procedure.

Plaintiff James Allen met his wife, Wanda, in 1951. They were married in 1953. They had three daughters; ages 11, 9 and 6 at trial time in early 1966. The family moved from Guthrie Center to Sac City in 1958. The Allens operated a furniture and sporting goods store. They met and became friendly with defendant William Lindeman, a Doctor of Chiropractic, and his wife. The two couples were together socially at frequent intervals. They attended movies together, visited at each others' homes and went on joint fishing and hunting trips. Before this association commenced and during the early part of their friendship plaintiff testified that he and his wife got along well and

loved each other. Defendant's evidence disputes this but here plaintiff is aided not alone by the jury's finding but by the presumption of affection between husband and wife. Glatstein v. Grund, 243 Iowa 541, 51 N.W.2d 162, 36 A. L. R.2d 531.

In discussing alienation of affections as a cause of action we have said: "In Rank v. Kuhn, 236 Iowa 854, 857, 20 N.W.2d 72, 74, we stated the essential elements of these causes of action: '(1) wrongful conduct of the defendant (2) loss of affection or consortium and (3) causal connection between such conduct and loss. * * * An actual intent to alienate is not necessary if defendant's conduct is inherently wrong and tends to and does have the effect complained of.' Citations and a discussion of the rule follow." Kiger v. Meehan, 253 Iowa 746, 750, 113 N.W.2d 743.

The record reveals specific incidents constituting strong evidence that plaintiff's wife, Wanda, and defendant were in fact meeting secretly without the presence or knowledge of their respective spouses. Such incidents include discovery by plaintiff that his wife was not at church where she was supposed to be; further investigation by husband, discovery of wife Wanda and defendant at defendant's home alone. When discovered in defendant's home plaintiff's wife, Wanda, had her shoes off and a "funny look on her face." Defendant was surprised and angry. He said to plaintiff, "Damn you. I ought to punch you one." Plaintiff said, "If the shoe fits, wear it." Defendant said no more. Plaintiff and his wife left.

A farmer, Mr. Gerken, testified to seeing Wanda in her station wagon, the rear of which was converted to a bed, in his farm lane. He returned to observe defendant's car parked in the close vicinity of plaintiff's station wagon on the country road leading to his farm. He took the license number of both cars and later learned that they belonged to plaintiff's wife and to defendant respectively.

There were also two letters from plaintiff's wife to defendant, the admissibility of which defendant contests. Their contents were completely revealing in relation to Mrs. Allen's feeling for Doctor Lindeman.

Plaintiff was also aided by passages from the discovery deposition. The deposition was significant, not for what defendant said, but for what, under close discovery examination, he did not say, could not remember or flatly refused to talk about under protection of Amendment 5 to the Constitution of the United States.

The intimate details of suspicious circumstances related by plaintiff, the compromising circumstance of the meeting in the farm lane near Carroll, the love letters written to defendant by plaintiff's wife and the evasive testimony of defendant himself were sufficient to create a jury question. We need not enliven this opinion with minutiae.

II. One of the main tactical battles centered around two letters identified as written by plaintiff's wife, Wanda, to defendant. These letters were found in defendant's home by defendant's wife. She took them to Rev. R. D. Butler and had him keep the letters for her. Over protest by the minister that the letters were confidential communications deposited with him in confidence, the trial court required production of the letters and admitted them into evidence. The evidence was material and relevant as showing the attitude of plaintiff's wife toward defendant and the effect of defendant's conduct toward her during the period of alienation. Puth v. Zimbleman, 99 Iowa 641, 68 N.W. 895; 42 C. J. S., Husband and Wife, section 688(d), page 341; Glatstein v. Grund, 243 Iowa 541, 51 N.W.2d 162, 36 A. L. R.2d 531; 42 C. J. S., Husband and Wife, section 688, page 341. The Glatstein case notes that such evidence is not competent to show defendant in fact asserted a wrongful influence or said or did things charged. However, defendant's objections did not go to this point. No admonition or limiting instruction was requested. In the absence of such request defendant cannot now complain. Kiger v. Meehan, 253 Iowa 746, 113 N.W.2d 743; Hall v. City of Shenandoah, 179 Iowa 1192, 162 N.W. 575; 88 C.J.S., Trial, section 131, page 265; 53 Am. Jur., Trial, section 97, page 87. Both of the foregoing legal encyclopedia sections also stand for the proposition that in the absence of a request for such limiting instruction, evidence so admitted is before the jury generally.

1390

III. The question of privilege is somewhat more difficult. Rev. R. D. Butler's foundation testimony and defense counsel's voir dire examination were relatively short. No effort was made to detail either the purpose or results of the confidence between Mrs. Lindeman and Reverend Butler, but the minister did state that the letters were turned over to him by his parishioner in her consultation with him as the minister of her church.

The trial court ruled that the letters were not privileged, that there was no relationship within the calling of minister between the author of the letters and Reverend Butler. We hold the ruling to be correct.

Section 622.10, Code, 1966, reads: "Communications in professional confidence. No practicing attorney, counselor, physician, surgeon, or the stenographer or confidential clerk of any such person, who obtains such information by reason of his employment, minister of the gospel or priest of any denomination shall be allowed, in giving testimony, to disclose any confidential communication properly entrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline. Such prohibition shall not apply to cases where the party in whose favor the same is made waives the rights conferred."

In interpreting this statute in relation to ministers of the gospel we said in Castner v. Wright, 256 Iowa 638, 646, 127 N.W.2d 583, 588, 128 N.W.2d 885: "This statute prevents a minister of the gospel from disclosing 'any confidential communication properly entrusted to him in his professional capacity * * *.' We have held the statute should be liberally construed and that the same statute prevents disclosure of knowledge and information gained by a physician from observation and personal examination of his patient in the discharge of his duties. Newman v. Blom, 249 Iowa 836, 843, 844, 89 N.W.2d 349, 354, 355, and citations; Bradshaw v. Iowa Methodist Hospital, 253 Iowa 1360, 1362, 115 N.W.2d 816, 817 (a four-to-four decision)."

We have also held that the privilege section should receive a liberal construction to carry out the manifest purpose of

the statute, Howard v. Porter, 240 Iowa 153, 35 N.W.2d 837 (no unfavorable inference arises from failure to call physician to testify to privileged matters). But this does not mean that every communication to a doctor, lawyer or minister is privileged. The burden of proving that the evidence sought to be excluded is privileged is on the one who seeks to exclude it. Stoddard v. Kendall, 140 Iowa 688, 119 N.W. 138; State v. Masters, 197 Iowa 1147, 198 N.W. 509.

We have here the delivery of two letters to a minister by the spouse of the addressee of the letters. While the minister in broad terms stated that the letters were delivered to him by Mrs. Lindeman as a parishioner in her consultation with him as her minister, this does not quite reach the mark. This court has succinctly stated: "That which the statute forbids is a disclosure of 'confidential communications' properly intrusted to him in his professional capacity and necessary and proper to enable him to discharge the functions of his office, according to the usual practice and discipline. Code, section 4608 [now 622.10]." Stoddard v. Kendall, supra, on page 691.

We are dealing with an independent document, not a direct communication to the minister. This matter does not seem to be treated either in text or encyclopedia in connection with ministerial privilege. It is treated extensively in connection with attorney-client privilege. We think the principle applies to documents delivered to any of the classes of persons within the orbit of the statutory privilege.

At 58 Am. Jur., Witnesses, section 501, page 281, we note: "Independent or Pre-existing Document—No privilege attaches to an instrument by reason of its passage from an attorney to his client, or vice versa, where the instrument existed prior to the formation of the relation of attorney and client, or although coming into existence subsequently, did so from independent causes. An attorney may be compelled to produce such a document unless it would be protected in the hands of the client by reason of some independent privilege. The reason is obvious; the administration of justice could easily be defeated if a party and his counsel could, by transferring from the one to the other important papers required as evidence in a cause, thereby pre-

vent the court from compelling the production of important papers on a trial. Whether the attorney may be compelled to produce such a document is a matter depending upon whether the client could have been compelled to produce it if it were in his own possession; when a party is made a competent witness, and compellable at the instance of an adverse party to testify the same as other witnesses, and to produce documents in his possession, his attorney can be compelled to produce them when he has possession thereof."

See also 97 C. J. S., Witnesses, section 283, page 807, and VIII Wigmore on Evidence, McNaughton Revision, section 2307, page 591.

IV. If the letters in question were privileged in the hands of Mrs. Lindeman, they were privileged in the hands of Reverend Butler. What then of the husband and wife privilege in this case? Section 622.9 reads: "Communications between husband and wife. Neither husband nor wife can be examined in any case as to any communication made by the one to the other while married, nor shall they, after the marriage relation ceases, be permitted to reveal in testimony any such communication made while the marriage subsisted." People v. Bowen, interpreting a similar statute, 165 Mich. 231, 237, 130 N.W. 706, 708, holds that a husband "had the right to testify to the contents of letters from others addressed to her, but received and read by him (provided it was not through her permission, if there were such) * * *."

See also 97 C. J. S., Witnesses, section 270(3), page 776; VIII Wigmore on Evidence, McNaughton Revision, section 2339 (3), page 668.

We think that what is said in Sexton v. Sexton, 129 Iowa 487, 105 N.W. 314, 2 L. R. A., N. S., 708, supports the rule announced in People v. Bowen, supra. Simply put, these letters were not communications between husband and wife. They were communications between paramour and husband which his wife happened to find. Upon proper subpoena the wife could be forced to produce them. So, also, the minister was properly forced to produce the letters.

V. Defendant cites Duff v. Henderson, 191 Iowa 819, 183 N.W. 475, for the proposition that, when a divorce decree is granted, the guilty party is barred from prosecuting an action for alienation of affections, Code, 1966, section 598.16. The rule was first reached by a divided court in Hamilton v. McNeill, 150 Iowa 470, 129 N.W. 480, after spirited discussion and followed by a divided court in Duff v. Henderson, supra. The rule was again applied in Jacobsen v. Saner, 247 Iowa 191, 72 N.W.2d 900.

A battle of divorce decrees developed. Plaintiff sought and obtained a decree of divorce in Iowa from the Sac County District Court on June 11, 1965. Plaintiff's wife went to Clark County, Nevada. Her divorce decree was dated July 7, 1965. The trial court ruled that the Sac County decree was valid and the later Nevada divorce was therefore a nullity. Objection to admission of the Nevada decree was sustained.

Defendant's attack on the Iowa decree is based on Code, 1966, section 598.25, which reads in part as follows: ."* * * *No decree of divorce shall be granted * * * before sixty (60) days. have elapsed from the date the Original Notice was served * * *. Provided the Court may in its discretion on written Motion supported by an Affidavit setting forth grounds of emergency or necessity, and facts which satisfy the Court that immediate action is warranted or requested to protect the substantive rights or interests of any party or person who may be affected by the Decree hold a hearing and grant a decree of divorce prior to the expiration of the sixty (60) day period, provided that requirements of notice have been complied with. In such case, the grounds of emergency or necessity and facts with respect thereto shall be recited in the decree unless otherwise ordered by the Court."

The decree itself recites: "* * * the Court having entered an Order of Default against the defendant, and the Court having heretofore entered an Order granting permission to have this matter heard before the expiration of the sixty-day waiting period, the Court examines the files and records, including the Original Notice with return of service, and finds therefrom that the defendant has been duly and legally served

■■■■■■■■■■ ■■■■■

with a sufficient Original Notice of the filing and pendency of the action within the manner and in the time required by law and proof thereof is on file herein; that the Court has full and complete jurisdiction in the premises, both of the parties, and of the subject matter, and the defendant is in default."

The decree based on the foregoing findings is presumptively valid. Richardson v. King, 157 Iowa 287, 135 N.W. 640; Miller v. Miller, 242 Iowa 706, 46 N.W.2d 732. It cannot be collaterally attacked by strangers to it. Farr v. Farr, 190 Iowa 1005, 181 N.W. 268. The decision of the trial court to accelerate the time of granting the decree was within its power and jurisdiction. Hence the decree must be deemed final, subject only to direct attack by proper parties within the time prescribed by law.

■■■■■■■ Defendant raised the question of subsequent divorce. The trial court did not err in admitting the Sac County decree and excluding the Nevada decree.

VI. We have alluded to plaintiff's use of discovery deposition answers by defendant as an important part of plaintiff's proof. Defendant assigns the use of these questions and answers as error. The discovery depositions of defendant were taken pursuant to Iowa Rules of Civil Procedure, rule 140 et seq.

The questions submitted to Doctor Lindeman at two discovery deposition proceedings and his answers are too long to be repeated here. However, several questions and answers are quoted as illustrative:

"Q. What is the fact as to whether or not you did have sexual relations with Mrs. Allen? A. I don't get that. I don't follow.

"Q. I will have the reporter read it to you. (The pending question was read by the reporter.) A. I don't know whether it has ever been established that I did have. * * *

"Q. Did Mrs. Allen ever write you a letter and in that letter state to the effect that she and you had sexual relations? A. I don't remember whether she did or whether she didn't.
"* * *

"Q. Have you ever told Mrs. Allen that you loved her? A. There again I don't remember that I ever did.

"Q. You may have but you don't recall? A. I may have but I don't recall. I don't know of any reason that I — — — —

"Q. Did she ever tell you that she loved you? A. I don't recall that either.

"* * *

"Q. Have you ever had sexual relations with Mrs. Allen? A. I refuse to answer on the grounds that the answer may incriminate me or lead to a chain of events or a link in a chain of events which may tend to incriminate me or hold me in public ignominy."

The foregoing quotations are taken out of context solely for the sake of brevity. Their impact is the same, in or out of context.

Defense counsel also made this record at the time plaintiff read the discovery material to the jury by reading the following question and answer to the jury.

"Q. Did you ever have sexual relations with Mrs. Allen? A. No.

"Q. Never? A. No, never."

The evasiveness shown in the deposition and the refusal to deny or admit relationships with plaintiff's wife were inconsistent with defendant's position that he had not alienated Wanda Allen's affections and was not guilty of criminal conversation with her. It is no answer to the use of the depositions to say that defendant was available at trial or that he did in fact subsequently testify on these matters.

These discovery procedures are designed in large part not only to allow the adversaries to gain knowledge in preparation but also to aid in development of proof. In White v. Walstrom, 254 Iowa 646, 650, 651, 118 N.W.2d 578, we said:

"Under the above rule [No. 144, Use of Depositions], unless we intend to tack some additional requirement on it, plaintiff may put defendant's deposition in evidence as part of the plaintiff's case, so far as the deposition is admissible and relevant. In fact plaintiff can make his whole case on defendant's deposition if he so desires. He could always prove his case by statements of defendant made out of court or put the defendant on as his own witness. It is no longer necessary to make defendant

1396

your own witness. Rule 145(b), Rules of Civil Procedure. This is one of the rights extended under the discovery depositions. Some districts now do this freely, others apparently do not. This right should be made clear."

We conclude that the right has been made clear. The use made of the deposition here was proper.

 VII. The fact that defendant relied on Amendment 5 may be shown to his detriment in a civil case. This matter was carefully considered in Amana Society v. Selzer, 250 Iowa 380, 94 N.W.2d 337, with extensive citation of authority. We need not repeat the reasoning or authorities here.

 VIII. Plaintiff offered in evidence the decree awarding defendant's wife a divorce. The court sustained defendant's objection thereto on grounds of incompetency, irrelevancy and immateriality. The validity of this ruling is not challenged by either party. Defendant contends that in plaintiff counsel's cross-examination of defendant, counsel persistently asked about the grounds for the divorce (infidelity) and that this action constituted such improper tactics as to require a new trial. We have examined the questions complained of with care. We do not find impropriety that would require a new trial. This also appears to have been the trial court's view. He did not abuse his discretion. We have reviewed Maland v. Tesdall, 232 Iowa 959, 5 N.W.2d 327; Pierce v. Huesinkveld, 234 Iowa 1348, 14 N.W.2d 275; Brooks v. Gilbert, 250 Iowa 1164, 98 N.W.2d 309. We do not find them applicable here.

 IX. Defendant devotes a division of his brief to failure to give ten requested instructions and to claimed error in the instructions given. These errors are subdivided into three broad divisions. The first is predicated on the assertion that an action for alienation of affections not based on criminal acts is essentially different from an action based on criminal conversation, though both contain elements in common, Hamilton v. McNeill, 150 Iowa 470, 129 N.W. 480, annotated cases, 1912D 604, and the gist of action for criminal conversation is adultery and seeks damages for loss of consortium, Rank v. Kuhn, 236 Iowa 854, 20 N.W.2d 72. Both of these propositions were

adequately covered in the court's instructions. Rank v. Kuhn at page 858 sets out the rule in Iowa as follows:

"A cause of action for alienation of affections does not necessarily, *though it may,* involve a loss of affection through adulterous relations. 27 Am. Jur. 136, section 536. In an alienation suit, although not essential to recovery, adultery between defendant and plaintiff's spouse may be shown in aggravation of damages, 42 C. J. S. 348, section 693; 27 Am. Jur. 143, 146, section 545; 3 Restatement of the Law, Torts, section 683, comments c and k. It is therefore entirely proper to include in a petition for alienation of affections, by way of aggravation, an allegation of adultery. It may fairly be concluded that is what was done here. The applicable principle here bears some analogy to the rule that a petition for breach of promise to marry may include an allegation of seduction in aggravation of damages." (Cases cited.)

Plaintiff's petition contained two divisions. Both had sufficient allegations to support submission of criminal conversation as an element of damages. The court submitted only one division. Criminal conversation was included in the instructions as an additional element of damages. We find no error in this method of instruction.

Defendant also emphasizes that plaintiff must prove that defendant wilfully, wrongfully and intentionally induced the alienation. Rank v. Kuhn, supra, dealt with the same contention. After quoting the three essential elements of this type action (noted in Division I hereof) we said in the Kuhn case: "An actual intent to alienate is not necessary if defendant's conduct is inherently wrong and tends to and does have the effect complained of." The court carefully and correctly instructed on this matter.

X. Defendant also states that the instruction on criminal conversation as an added element of damages should not have been given because there was no competent evidence to sustain such an instruction. What we have said in Division I hereof disposes of this complaint.

The instructions read as a whole contained no reversible error. All of the concepts contained in defendant's requested

instructions that were proper were covered by the court's instructions. The concepts omitted by the court were properly omitted.

 XI. Finally defendant asserts that the $20,000 verdict is so large that it must be the result of passion and prejudice. He cites Porter v. Heishman, 175 Iowa 335, 154 N.W. 503; Warren v. Graham, 174 Iowa 162, 156 N.W. 323; and Peak v. Rhyno, 200 Iowa 864, 205 N.W. 515. All of those cases are distinguishable on their facts.

More analogous both in point of time and fact is Glatstein v. Grund, supra, where we sustained a $15,000 verdict for alienation of affection with the following language on pages 557, 558 of 243 Iowa:

" 'A verdict should not be disturbed unless it is so flagrantly excessive as to raise a presumption that it was the result of passion, prejudice or undue influence. [Citation]' Thornbury v. Maley, 242 Iowa 70, 80, 45 N.W.2d 576, 582. See also DeToskey v. Ruan Transport Corp., 241 Iowa 45, 49, 40 N.W.2d 4, 6, 17 A. L. R.2d 826, which states it must affirmatively be shown prejudice and passion existed before this court should interfere with a verdict.

"We have also said, '* * * only where the award appears to be unconscionable or clearly not warranted by the record should the judgment of the jury * * * be disturbed. * * * Each case must necessarily turn upon its own particular facts.' Dunham v. Des Moines Railway Co., 240 Iowa 421, 430, 35 N.W. 2d 578, 583, 584; Primus v. Bellevue Apartments, 241 Iowa 1055, 1065, 44 N.W.2d 347, 353. See also Dedman v. McKinley, 238 Iowa 886, 892, 29 N.W.2d 337, 340, and citations, which say the test as to whether we should interfere with a verdict is whether 'it is so excessive as to shock the conscience.'

 "27 Am. Jur., Husband and Wife, section 543, page 142, states: 'All courts recognize the difficulty, if not the impossibility, of formulating any rule to measure loss of consortium and affections in money, and they recognize that a wide latitude must be allowed the jury for the exercise of judgment. * * * The tendency of the courts is toward liberality in fixing such compensation.'

"In two actions for alienation of affections and criminal conversation we have said, 'Damages such as may be awarded can but inadequately compensate for such a wrong; and for this reason, courts rarely, if ever, interfere with the measure meted out by the jury.' Ruby v. Lawson (Ladd, J.), 182 Iowa 1156, 1161, 166 N.W. 481, 483; Peak v. Rhyno, 200 Iowa 864, 868, 205 N.W. 515.

"Amounts allowed in cases of this character are pointed out in annotations 66 A. L. R. 609, 69 A. L. R. 1282."

In the recent case of Castner v. Wright, 256 Iowa 638, 127 N.W.2d 583, 128 N.W.2d 885, the jury awarded a verdict of $45,000 in an alienation of affection action. The trial court ordered a remittitur of all in excess of $12,500. We allowed this order to stand. Here the trial court did not think a remittitur was indicated. Further, factual differences make each prior case of doubtful validity in passing on such matters. We do not find cause for interference with the jury's verdict on this ground in this case.

XII. Plaintiff filed motion to dismiss appeal on the ground that the notice stated appeal was taken "from the final judgment and decision in this cause entered on the 11th of November, 1965, and from the final order and decree herein." Notice was filed more than thirty days after November 11, 1965, but less than thirty days after ruling on motions for judgment notwithstanding the verdict and motion for new trial. Under rule 335 notice of appeal was timely filed. Appellee's printing cost for motion to dismiss appeal shall not be charged against appellant.—Affirmed.

THORNTON, J., concurs.

GARFIELD, C. J., and LARSON, SNELL, MOORE, STUART, MASON and RAWLINGS, JJ., concur specially.

GARFIELD, C. J. (concurring specially)—I concur in the result and in the opinion except for Division XI concerning the size of the verdict.

My unwillingness to concur in that division is because I think it leaves the impression the only ground upon which we

interfere with a verdict, by reason of its amount, is that it is so flagrantly excessive as to be the result of passion, prejudice or undue influence.

It should be clearly pointed out we have repeatedly held, especially in many recent cases, that we also interfere with a verdict, because of its size, where it is lacking in evidential support although there may be no passion or prejudice.

Henneman v. McCalla, 260 Iowa 60, 80, 148 N.W.2d 447, 459, accurately states the rule to which we are firmly committed. Beyer v. City of Dubuque, 258 Iowa 476, 489, 139 N.W.2d 428, 436, cited in the Henneman opinion, also correctly sets out the rule. Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 718, 107 N.W.2d 85, 92, cited in the Beyer case, in turn cites four recent opinions in support of the prevailing rule.

In Giarratano v. The Weitz Co., 259 Iowa 1292, 1314, 147 N.W.2d 824, 837, we reduced a verdict for $75,000 by one third upon pain of a new trial. The ground assigned for the order is that "the verdict is clearly above what the record justifies," citing and approving what is said in Tedrow v. Fort Des Moines Community Services, Inc., 254 Iowa 193, 201–204, 117 N.W.2d 62, 66–68. Neither the Giarratano nor Tedrow opinion indicates the verdict resulted from passion or prejudice or that a showing thereof is a necessary ground for appellate relief.

Miller v. Town of Ankeny, 253 Iowa 1055, 1063, 114 N.W.2d 910, 915, states "We think a trial court and, to a lesser extent, this court should not approve a verdict found to be excessive because not supported by sufficient evidence even in the absence of passion, prejudice or sympathy on the part of the jury." Four recent cases are analyzed, with quotations from three, supporting the statement. Fredrickson v. Heline, 252 Iowa 92, 96, 106 N.W.2d 74, 77, is also cited.

Mazur v. Grantham, 255 Iowa 1292, 1303, 125 N.W.2d 807, 813, 814, makes this important pronouncement:

"In considering the size of verdicts we have repeatedly referred to passion and prejudice, shock the conscience, failure to administer substantial justice, the rule of fair compensation, and lack of support in the evidence. See Engman v. City of

Des Moines, 255 Iowa 1039, 125 N.W.2d 235; Rauch v. American Radiator & Standard Sanitary Corp., 252 Iowa 1, 104 N.W.2d 607; Ferris v. Riley, 251 Iowa 400, 101 N.W.2d 176; Hamdorf v. Corrie, 251 Iowa 896, 101 N.W.2d 836; Stevenson v. Abbott, 251 Iowa 110, 99 N.W.2d 429; and Jesse v. Wemer & Wemer Co., 248 Iowa 1002, 82 N.W.2d 82. See also 48 Iowa Law Review, pages 649–665. *It seems fundamental the most important of these is support in the evidence. If the verdict has support in the evidence the others will hardly arise, if it lacks support they may all arise. The real question in most cases, and here, is the amount and sufficiency of evidence to support the award made*" (emphasis added).

Francis v. Barnes, 256 Iowa 1176, 1181, 130 N.W.2d 683, 686, also clearly expresses the point sought to be made herein:

"Defendant urges the verdicts to both husband and wife were excessive because not supported by the evidence. He cites Miller v. Town of Ankeny, 253 Iowa 1055, 114 N.W.2d 910; Ferris v. Riley, 251 Iowa 400, 101 N.W.2d 176; Heerde v. Kinkade, 249 Iowa 85, 85 N.W.2d 908; and Jurgens v. Davenport, Rock Island and Northwestern Railway Co., 249 Iowa 711, 88 N.W.2d 797, for the proposition a verdict may be excessive because it is not supported by the evidence in the absence of passion and prejudice and that justice may be effectuated by a remittitur. To these might be added Engman v. City of Des Moines, 255 Iowa 1039, 125 N.W.2d 235."

Several other Iowa cases which support this opinion include Booth v. General Mills, Inc., 243 Iowa 206, 211, 49 N.W.2d 561, 563; Soreide v. Vilas & Co., 247 Iowa 1139, 1153, 78 N.W.2d 41, 49; Castner v. Wright, 256 Iowa 638, 657, 127 N.W.2d 583, 594, 128 N.W.2d 885.

LARSON, SNELL, MOORE, STUART, MASON and RAWLINGS, JJ., join in the foregoing special concurrence.